ANGELL *v.* PRUYN.

1. SALE OF FRUIT TREES—BREACH OF WARRANTY—DECLARATION—
AMENDMENT—NEW CAUSE OF ACTION.

In an action for breach of warranty in the sale of fruit trees, a motion to amend the declaration, which counted on purchases under two orders of a certain year, so as to include a purchase under a third order of a later year, should have been denied, since its allowance introduced a new and different cause of action.

2. SAME—DAMAGES.

In an action to recover damages for selling plaintiff fruit trees of a variety inferior to those ordered by him, it cannot be shown in defense that the breach of warranty was harmless for the reason that the trees were winter-killed after the commencement of suit.

3. SAME—EVIDENCE—VALUE—CROSS-EXAMINATION.

In an action to recover damages for selling plaintiff fruit trees of a variety inferior to those ordered by him, one of his witnesses testified as to the value that would have been added to his premises had the trees been of the varieties ordered. A question, asked on cross-examination, as to the cost of cultivating the trees in connection with other crops, was excluded. *Held,* that the inquiry was proper, not only to test the competency and credibility of the witness, but also to aid the jury in determining the question of fact.

Error to Kent; Perkins, J.    Submitted October 11, 1900.    Decided February 27, 1901.

*Assumpsit* by Daniel M. Angell against John Pruyn for breach of warranty on a sale of fruit trees.    From a judgment for plaintiff, defendant brings error.    Reversed.

*Crane, Norris & Stevens,* for appellant.

*Jamison & Ferguson,* for appellee.

LONG, J.    The plaintiff is a farmer living in Ottawa county.    Defendant is a nurseryman of Grand Rapids. In the fall of 1894 plaintiff placed two orders for peach trees with the defendant, — the first for 1,000 and the second for 800; the trees to be of certain varieties specified upon the back of each order respectively.    The purchase price for the entire 1,800 trees was $135.    Delivery was to be made in the following spring.    At the time for delivery, the defendant, not having all the varieties ordered, agreed to substitute for part of the order trees of other varieties, equally as good, which plaintiff accepted; and the trees were furnished and set out on his farm.    In August, 1895, plaintiff placed a third order with defendant for 2,125 trees, at the purchase price of $150, to be delivered in the spring of 1896, and to be of certain specified varieties.    As with the 1894 orders, other varieties, represented to be equally good, were in part substituted, and the trees accepted and set out.    About 1,250 of these trees proved to be untrue to label.    Suit to recover damages for breach of warranty of the trees was begun December 14, 1898, and the trial was had in January, 1900.

The plaintiff introduced testimony tending to show that some of the trees included in these three separate orders were not of the varieties agreed to be furnished, but were trees of much less value; that this was not discovered until the spring or summer of 1898, when the trees began to bear. Mr. Edison, the supervisor of the township, and a fruit grower of many years' experience, was called as a witness

126 MICH.—2.

by the plaintiff, and asked what the added value to 14 and a fraction acres of land would have been, set out to Smock, Crawford, and other standard varieties, when bearing in the fall of 1898. This was objected to on the ground that the declaration counted only on the two orders of 1894. The court permitted the filing of an amended declaration setting out the order of 1895. In allowing the amendment the court said:

"The sum total of those orders—those three orders— was about 4,000 trees. The particular contracts or orders are not specified, except as it is stated that the contract was made September 15, 1894. The trees were delivered, set out, several years elapsed, and this suit was brought, counting upon a contract which is alleged to have been made September 15, 1894, but setting forth the entire number of trees which it is alleged were defective under the three orders. The case has proceeded thus far, a day and a half, upon the theory that the three orders were given, and that all testimony relative to either one of them was admissible. The orders have been produced,— offered in evidence. No objection has been raised to any of the testimony relative to either of the orders. I have my doubts as to whether the declaration, on its face, is defective, inasmuch as each of the counts covers the entire delivery covered by the three orders; and, further, that, if it is defective, the case has proceeded upon both sides upon the theory that it was sufficient and adequate to cover the three orders for trees numbering something like 4,000, and if defective, under these circumstances, no objection having been taken at the time the testimony concerning either of the two later orders was offered, I would be inclined to permit the amendment. It is one transaction. It is the delivery of trees, and it is alleged that 4,000 were delivered, a certain portion of them defective. It is all covered by the declaration, only the declaration does not specify three different dates as to the times these orders were given. * * * I hardly think it would constitute a new cause of action to include these two orders, in any event. I do not think it is a new contract, and, if the declaration should specify the date that the later orders were given, why, it can be so amended. Certainly no one will be injured. The defendant cannot be injured by such an amendment, because the plaintiff and defendant both

proceed upon the theory that there were three orders for trees in this case, and three deliveries."

The defendant objected to the filing of an amended declaration upon the sole ground that the amended declaration set up a new cause of action. This is the first question presented. We think the court was in error in this ruling. The original declaration counts upon a purchase made in the fall of 1894, to wit, September 15th of that year. The first two orders were taken during that month. The trees, under those orders, it is alleged, were delivered to plaintiff in the spring of 1895, and set out and cultivated. It is now sought by the amended declaration to introduce into the case a breach of warranty growing out of an order made in August, 1895, and the trees delivered thereunder in the spring of 1896. This is introducing into the case during its trial a cause of action not originally counted upon. It is well settled that it is error to allow a declaration to be amended so as to introduce and set up a new cause of action. *People* v. *Judges of Washtenaw Circuit Court,* 1 Doug. 434; *Connecticut Fire Ins. Co.* v. *Monroe Circuit Judge,* 77 Mich. 231 (43 N. W. 871, 18 Am. St. Rep. 398); *Hurst* v. *Railway,* 84 Mich. 539 (48 N. W. 44). A recovery under the original declaration in this case would have constituted no bar to a recovery upon the agreement made in the fall of 1895. *Stickel* v. *Steel,* 41 Mich. 350 (1 N. W. 1046); *Reid, Murdock & Co.* v. *Ferris,* 112 Mich. 693 (71 N. W. 484, 67 Am. St. Rep. 437); *Phelps* v. *Abbott,* 116 Mich. 624 (74 N. W. 1010). The evidence which would support the claim under the agreement of 1894 would not support the agreement claimed to have been made in 1895, nor would it in any manner tend to support the claimed breach of such agreement; and evidence of the agreement made in 1895 and the breach thereof would not support the cause of action for the breach of the agreement made in the fall of 1894. In such case the cause of action is new, and cannot be brought in by way of amendment. *Hurst* v. *Railway,* 84 Mich. 539 (48 N. W. 44).

Testimony was introduced tending to show that some of the trees were injured by the cold weather of 1898–99. The court ordered this testimony stricken out, and charged the jury that the amount of damages was to be determined by the condition of the trees at the time of commencement of suit. It appears from the record that Mr. Pelton, a witness called by plaintiff, was asked on cross-examination:

"*Q.* Do you know anything in regard to trees freezing last winter,—whether they froze or not?

"*A.* In general, yes; they did.

"*Q.* Quite a number pulled them up on that account, did they not?"

The court refused to receive the answer to this last question, remarking: "It is immaterial." This was not error. That question was settled in *Heilman* v. *Pruyn*, 122 Mich. 301 (81 N. W. 97). It was there said:

"The law does not permit the defendant to avoid his contract because the trees were injured or destroyed by circumstances beyond the control of the parties. The rights of the parties were to be determined by the situation of affairs at the commencement of the suit."

It is also claimed that the court was in error in refusing to allow the plaintiff's son to be cross-examined as to the cost of raising the trees, and the cost of cultivating them in connection with other crops. In the direct examination of this witness, he had testified that the trees planted in 1895 would have added a value of $2 apiece to the realty in 1898, and the trees planted in 1896 would have added a value of $1.50 apiece to the realty in 1898, had they been of the varieties ordered. Upon cross-examination he was asked: "How much was it worth a tree to raise those trees for the time that elapsed?" This was objected to, and the objection sustained. The purpose of the question was stated by counsel for defendant as follows:

"Plaintiff's counsel was allowed to ask the question what these trees were worth, and we claim we have a right to inquire into what he bases the answer on. * * *

We shall claim we have a right to show what is the cost of raising these trees, and the cost of cultivating them with other crops, as a basis of what the tree is worth."

It is claimed that the question was proper for the purpose of testing the competency of the witness, and also the weight to be given to his opinion. It is the settled rule that great latitude should be allowed on the cross-examination of a witness who has given an opinion as to value, in order to test his competency and credibility. *Kelley* v. *Richardson*, 69 Mich. 430 (37 N. W. 514); 1 Thomp. Trials, § 413. The court was in error in excluding this cross-examination.

But counsel for defendant now claim it was competent for another purpose. It is said that the cost of raising the trees and of cultivating them was proper evidence as elements in aiding the jury to determine what would be the value of the land with trees of the proper varieties. We think the question was competent for that purpose, also. A somewhat analogous question was raised in *Fox* v. *Everson*, 27 Hun, 355, and *Galveston, etc., R. Co.* v. *Parr*, 8 Tex. Civ. App. 280 (28 S. W. 264). In the first case, which was an action for breach of warranty of clover seed, plantain seed was mixed with the clover, and caused damage to the plaintiff's land. It was said by the court:

"This difference between the value of the land or farm before the sowing of the plantain seed and the value of it after the sowing furnishes him full compensation for the injury to the land, and, in our judgment, becomes the measure of damages in the case. For the purpose of determining the damages to the land, it is doubtless competent to show the extent to which the noxious weed had grown upon the land from the seed sown; the expense and labor, together with the difficulty, of removing and killing it; the extent to which it would interfere with the growing and production of crops."

But, aside from this rule of law, the record shows that the questions were proper for both purposes for which they were asked. After the questions as to the cost of

raising the trees and of cultivating them with other crops had been ruled out, the witness was asked, "What do you base the value of $1.50 a tree on?" and answered: "Upon the labor expended there, * * * and the ground lying idle. * * * I base my estimate of $1.50 a tree, also, on the pruning and hoeing and watering year after year." These were the very elements the witness was asked to place a value upon, and which the court ruled out. The jury was therefore left to the mere opinion of the witness.

We think but one other question need be discussed. It is claimed that the value of land as the measure of damages for tort or breach of contract is always the market value, and that it nowhere appears in the case that the land had no market value, but that, on the contrary, it appears that there had been sales of similar peach lands and orchards. We do not find that this question was suggested by any request to charge, nor do we find that the attention of the court was called to it in any other way.

For the errors pointed out, the judgment must be reversed, and a new trial granted.

The other Justices concurred.