MUSSELMAN GROCER CO. *v.* CASLER.

1. WITNESSES — EXAMINATION — DEVELOPMENT OF MATTERS ELICITED BY ADVERSARY.

   Where a matter is first brought out on cross-examination, it is proper, on re-direct, to show a full explanation of the transaction, if relevant.

2. EVIDENCE—PAROL TESTIMONY TO CONTRADICT RECORD—DEEDS.

   On the issue whether defendant owned land on January 15th, plaintiff having shown a deed from the record owner to defendant's brother, dated December 24th, and recorded July 5th, it is proper to show that defendant was entitled to a deed December 24th, on which day one was tendered him and refused, and that subsequently, shortly before it was recorded,

the name of the grantee was changed, and the deed delivered to defendant's brother, he having taken an assignment of defendant's rights.

3. FRAUD—SALES—FALSE REPRESENTATIONS TO OBTAIN CREDIT—OFFER TO SETTLE.

In an action commenced by capias to recover a debt alleged to have been fraudulently contracted, the admission of evidence that defendant ineffectually offered to settle is error.

4. SAME—PLEADING—AMENDMENT.

In an action commenced by capias to recover a debt claimed to have been fraudulently contracted, plaintiff alleged that defendant made false representations as to his financial condition for the purpose of obtaining credit. On trial, plaintiff sought leave to amend so as to allege that, after the making of the original representations, defendant's financial condition changed so that he was not entitled to credit, and that defendant's failure to notify plaintiff of this change was fraudulent. *Held*, that leave to amend was properly denied, the proposed amendment changing the cause of action.

Error to Wexford; Chittenden, J. Submitted April 15, 1904. (Docket No. 67.) Decided October 18, 1904.

Case by the Musselman Grocer Company against Spurgeon D. Casler for obtaining goods by false representations. Suit was begun by capias. There was judgment for defendant, and plaintiff brings error. Affirmed.

*Smedley & Corwin* (*Fred C. Wetmore*, of counsel), for appellant.

*J. B. Hendee* (*D. E. McIntyre*, of counsel), for appellee.

MOORE, C. J. This suit was commenced by capias to recover the value of upwards of $700 worth of groceries sold by plaintiff to defendant. It was the claim of plaintiff that the goods were obtained by means of false representations. The case was tried by a jury, which returned a verdict in favor of defendant. The case is brought here by writ of error.

Among other things stated in the affidavit made by Mr. Musselman in order to obtain the writ of capias was the following:

"Deponent further says that Spurgeon D. Casler in the month of January, 1901, was carrying on a retail store at Farnsworth, Wexford county, Michigan, carrying general merchandise, and that said Spurgeon D. Casler desired to buy goods from said Musselman Grocer Company on credit, and that, before selling any goods to said Spurgeon D. Casler on credit, this deponent wrote said Spurgeon D. Casler for a statement in writing of his financial condition, in order that this deponent, as creditman for said corporation, could pass upon the advisability of shipping goods to said Spurgeon D. Casler on credit.

"Deponent further says that on the 15th day of January, 1901, he received from said Spurgeon D. Casler a written statement in regard to his financial condition, in which statement the said Spurgeon D. Casler stated that he paid $500 in cash for the store building and ground at Farnsworth, Michigan, and that he paid $550 in cash for the stock of merchandise, and that he put on said real estate $150 in repairs, and that he had $200 cash on hand.

"Deponent further says that said statement was made by said Spurgeon D. Casler for the purpose of deceiving the said Musselman Grocer Company, and obtaining goods from said corporation on credit. Deponent further says that the said statement made by said Spurgeon D. Casler to said corporation was not true, and that it was made by the said Spurgeon D. Casler for the express purpose and intent of obtaining goods from said Musselman Grocer Company. Deponent further says that the said Musselman Grocer Company, nor this deponent, knew nothing of said fraud until on or about the 15th day of July, 1901.

"Deponent further says: That, believing said representations so made by said Spurgeon D. Casler to said Musselman Grocer Company to be true, the said Musselman Grocer Company sold and shipped goods to the said Spurgeon D. Casler at various times on credit, amounting, in all that remains unpaid, to $719.06. * * * That said goods would not have been sold if deponent had known the representations were false. * * *

"That the said Spurgeon D. Casler is now justly indebted to the said Musselman Grocer Company the sum of $719.06 for the goods so obtained, and that the same is

now due to the said Musselman Grocer Company over and above all legal set-offs. That demand has been made upon the said Spurgeon D. Casler to pay the same, and that he neglects and refuses so to do. Deponent therefore says that the said Musselman Grocer Company has a claim for damages against the said Spurgeon D. Casler in an action of trespass on the case for fraud perpetrated on the said Musselman Grocer Company, and said Musselman Grocer Company claims $1,000 damages.

" That the statement made by said Spurgeon D. Casler to this deponent and to Musselman Grocer Company is untrue. That the said Spurgeon D. Casler did not pay $500 for his store property and real estate at Farnsworth, and did not pay any sum whatever. That the deed of said real estate was made to J. E. Casler, and not to Spurgeon D. Casler, and that said deed was made and executed on the 24th day of December, 1900, but was kept off of record until the 5th day of July, 1901, for the purpose of preventing creditors from learning in whose name said real estate was bought, and that the keeping the same from record was done for the purpose of hindering and delaying and defrauding the creditors of said Spurgeon D. Casler. That said Spurgeon D. Casler never owned said real estate, and that on the 15th day of January, 1901, at the time he wrote the letter to this deponent, as creditman for said Musselman Grocer Company, the said Spurgeon D. Casler knew that the property did not belong to him, but belonged to J. E. Casler, and that he concealed this fact from said Musselman Grocer Company and from this deponent for the purpose of deceiving the said Musselman Grocer Company and obtaining goods from it on credit."

The averments in the declaration follow substantially the statements made in the affidavit, and conclude as follows:

"And the plaintiff avers that by means of said statement so made as aforesaid, and which was false and fraudulent, the said defendant obtained the property of this plaintiff to the amount aforesaid, which the said defendant has neglected and refused to pay to said plaintiff, and by means of the premises the said plaintiff has lost and been deprived of its property, of the value aforesaid, to the damage of the plaintiff of $1,000."

The defendant pleaded the general issue.

Plaintiff's counsel discuss the assignments of error under the following heads:

(1) The admission of irrelevant testimony which tended to prejudice plaintiff's case.

(2) The admission of evidence to contradict the records in the register of deeds' office, and the refusal to strike out the evidence in regard to the deed after it was shown that the deed had been changed, after its execution and acknowledgment, without the consent of the grantor.

(3) The admission of evidence of an offer to settle, and the argument of counsel thereon.

(4) The refusal of the court to allow plaintiff to amend its declaration, and to give plaintiff's eleventh request to charge.

(5) The charge to the jury that it was necessary for plaintiff to prove that the statements made by defendant in his letter were willfully made, and were false and fraudulent.

In disposing of the case, we will endeavor to follow the same order.

*First.* The testimony related to a $500 note which defendant received when he sold out, which plaintiff claims defendant agreed to send to him, but which found its way to the attorney for the defendant, and then into the hands of James E. Casler, defendant's brother. When the brother was on the stand, it was drawn out on cross-examination that he obtained the note from his brother's attorney; that he paid him no money for it, but was to stand behind his brother in the litigation he was having. If this testimony drawn out by plaintiff had any bearing upon the case, it was proper on the part of the witness to explain what there was of the transaction.

*Second.* It was the claim of plaintiff that when the letter of January 15, 1901, was written, the statement therein that defendant had paid O. J. La Batt $500 cash for his property was not true, and that the property at that time belonged to J. E. Casler; and, for the purpose of supporting that claim, he introduced in evidence the record of a deed in which J. E. Casler was grantee, which purported to have been made December 24, 1900, and was recorded

July 5, 1901. It was the claim of defendant that he bought the property from Mr. La Batt, and took from him an assignment of a land contract, and that he paid for the land upwards of $500. It is his further claim that when the deed of December 24, 1900, was made out, he was the grantee therein named, and that, because the title conveyed therein was not what he was entitled to, he declined to take the deed, and it was left with Mr. Farnsworth, the grantor, until about the time when it was recorded; that at this time J. E. Casler had bought the property from defendant, and his name was inserted in the deed as grantee; and that when the letter was written the property belonged to defendant. As bearing upon this claim, we think the evidence was admissible.

*Third.* Was the admission of evidence of defendant's offer to settle, and the comment of counsel thereon, error? The important question in the case, as presented by the pleadings, was whether the representations made were false, and did they lead to the giving of the credit? There is no claim this offer to settle resulted in anything. We think it had a tendency, especially in view of the use made of it by counsel, to prejudice the case of plaintiff, but we think it not sufficiently harmful to reverse the case. See *Chandler* v. *Allison*, 10 Mich. 460; *Pelton* v. *Schmidt*, 104 Mich. 345.

*Fourth.* The plaintiff asked the court to give the following charge:

" If defendant made this statement on the 15th day of January, 1901, to the Musselman Grocer Company, of his financial condition, and even if it was true at that time that he had bought and was the owner of the store building and ground where he was running his store, yet afterwards, when he became embarrassed, in the month of May, and transferred all his interests in this real estate to his brother James Casler, and he then knew that his financial condition had changed, and that he was still obtaining credit from this firm, the Musselman Grocer Company, it was his duty to notify the Musselman Grocer Company of his changed financial condition, in order that

they would not be misled by his former statement, and continue to give credit to him when he was not entitled to the same.    If you find that he did not notify the Musselman Grocer Company, or Mr. Musselman, of his changed financial condition, and of the fact that he had transferred all his interest in the real estate to his brother, and continued from that time on to buy goods on credit from said firm, then I charge you, as a matter of law, that he is liable for all the goods that he bought from this firm, and did not pay for, after turning over real estate to his brother; and the undisputed evidence in this case is that, after the assignment of the real estate to his brother, he obtained on credit from said Musselman Grocer Company goods to the amount of $429.91 which he never paid for, and for which amount the plaintiff is entitled to a verdict, if you find that the defendant, Spurgeon D. Casler, did not correctly state to them his condition relative to the real estate after his brother had obtained this assignment of the land contract. "

The judge was of the opinion that, under the declaration, the plaintiff was not entitled to the request.    When he so intimated, counsel for plaintiff said :

" If that is the court's ruling, then we move that we be allowed to amend the declaration to that effect.    My own opinion is that it is not necessary at all, but, if that is the court's opinion, we would ask leave to amend.    We could not have done it until today, because we did not know the facts until now.    Therefore we move the court now for leave to amend the declaration by inserting a count based upon the change in the defendant's condition—that he knew on the 4th day of May, having transferred his property to his brother, and put himself in a condition where he was not worthy of credit; that he did not inform the plaintiff, nor Mr. Musselman, the agent of the plaintiff, nor any of the agents of the plaintiff, of his changed condition, and on account of that change he was not entitled to credit, but still continued to buy, and did buy over $400 worth of goods, which he did not pay for, after the changed condition, and after the transfer of this property."

Counsel for defendant objected upon the ground that the amendment alleged a new and different cause of action, and the judge refused to grant the amendment.    It is very clear the cause of action stated in the proposed

amendment was a very different cause of action from the one stated in the affidavit which is the basis of the proceeding, and different from the original declaration. We think the judge was right in holding the amendment was not permissible. See *Fish* v. *Barbour*, 43 Mich. 19; *Wilkinson* v. *Nichols*, 48 Mich. 354; *Bolton* v. *Nitz*, 88 Mich. 354; *Angell* v. *Pruyn*, 126 Mich. 16.

Judgment is affirmed.

Carpenter, Montgomery, and Hooker, JJ., concurred. Grant, J., did not sit.