## CHARVAT v. GILDEMEISTER.

1. PLEADING — AMENDMENT OF DECLARATION—FRAUD — PRINCIPAL AND AGENT.

    In an action for fraud commenced by *capias ad respondendum*, an amendment to the declaration alleging that defendant acted through his agent, which accorded with the allegation in the affidavit for the writ, laid no new cause of action, and did not at all enlarge or change the identity of the action declared on.

2. TORTS—PRINCIPAL AND AGENT—JOINT OR SEVERAL DEFENDANTS.

    Where the wrong complained of, in an action for fraud, was accomplished through the joint action of defendant and his brother, the matter of the agency of the brother was of little or no importance, since in torts wrongdoers may be sued jointly or severally.

3. EVIDENCE—TESTIMONY BY LESSEES—FRAUD—BEST EVIDENCE.

    Where the fraud complained of was in inducing plaintiff to invest in leases on designated hotels claimed by defendant to be owned by him, testimony by the lessees of said hotels that they had leases thereon, and that defendant had no lease, *held*, admissible, as against the objection that the leases were the best evidence, to negative leases held by defendant.

4. SAME—STATUTES—PROOF OF SIGNATURE.

    3 Comp. Laws 1915, § 12539, was not enacted for the purpose of settling the method of proving handwriting and signatures, and does not disturb the rule permitting a signature to be proven by the testimony of any one who has seen the person write and is familiar with his signature and testifies he can identify the same, but merely extends one method of evidence by permitting genuine specimens of handwriting or signature of a person to be used for the purpose of comparison.

5. NEW TRIAL—WEIGHT OF EVIDENCE.

    Where all the evidence in a case directly supported plaintiff's claim of fraud, and there was no evidence on the

part of defendant, the question of the weight of the evidence does not arise, and may not be urged on motion for new trial on the ground that the verdict for plaintiff was against the weight of the evidence.

6. FRAUD—INTEREST IN REAL PROPERTY—PRINCIPAL AND AGENT.

An action for fraud in the sale of leases in certain hotels involved no question relating to real property requiring proof of the agency of defendant's agent to be in writing.

7. SAME—CONTRACTS—CONSIDERATION.

Since plaintiff did not sue upon an agreement, but to recover money obtained from her by false representations, the rule of law relative to consideration of contracts had no application.

Error to Wayne; Richter (Theodore J.), J.   Submitted January 17, 1923.     (Docket No. 106.)     Decided March 22, 1923.

*Davidow & Davidow,* for appellant.

*Edward Pokorny,* for appellee.

WIEST, C. J.   This suit was commenced by *capias ad respondendum.*   In the affidavit for the writ plaintiff alleged:

"That on the 31st day of July, A. D. 1920, and the 30th day of August, A. D. 1920, Charles B. Gildemeister by his agent, John Gildemeister, and who is his brother, represented that said Charles B. Gildemeister is the owner of a lease for the Montcalm hotel, 127 West Montcalm avenue, and the Clayton hotel, High and Clifford streets, Detroit, Michigan, and that affiant relied upon that representation that Charles B. Gildemeister was the owner of a lease covering the Montcalm hotel and the Clayton hotel and it was further represented to affiant that she was to be paid eight per cent. (8%) per month as profits

upon any sum of money she desired to invest in these leases. That affiant expressed a desire to invest the sum of five hundred ($500.00) dollars in the lease for the Montcalm hotel and seven hundred and fifty ($750.00) dollars in the lease for the Clayton hotel and, accordingly, a written contract was prepared in each case and signed by Charles B. Gildemeister and affiant, and witnessed by John Gildemeister, and a copy of such contracts secured are attached to the declaration with this affidavit. Relying upon representations incorporated in the written agreement that Charles B. Gildemeister was the owner of a lease covering the Montcalm hotel and a lease covering the Clayton hotel, affiant was induced to pay to John Gildemeister, agent of Charles B. Gildemeister, the sum of twelve hundred and fifty ($1,250.00) dollars. "That thereafter this affiant learned that said Charles B. Gildemeister was not the owner of a lease covering the Montcalm hotel nor the owner of a lease covering the Clayton hotel, and that affiant had been defrauded and deceived."

At the beginning of the trial plaintiff was granted leave to amend the declaration by alleging that defendant acted through his agent, John Gildemeister. Defendant insists that this amendment "changed plaintiff's cause of action," and cites *Musselman Grocer Co.* v. *Casler*, 138 Mich. 24. In that case the proposed amendment stated a different cause of action from the one in the affidavit for the *capias*. In the case at bar the amendment brought the declaration to the allegation in the affidavit for the writ, laid no new cause of action and did not at all enlarge or change the identity of the action declared on. Besides, this amendment was wholly unnecessary even under the claim of agency as it was but a statement of the evidence to be given against defendant.

"It is a maxim of the law of agency that he who acts through another acts of himself." 16 Enc. Pl. & Pr. p. 890.

Under the evidence, plaintiff was not required to

show agency in order to hold defendant, for the agreements with plaintiff, signed by defendant, constituted complete proof of the statements claimed to have been made, for in them he stated he was the owner of the leases of the hotels. The wrong complained of, under the evidence, was accomplished through the joint action of defendant and his brother, and the matter of agency of John for Charles was of little or no importance, for, in torts like this, the law does not consider agency at all but permits the wrong-doers to be sued jointly or severally. Defendant claims there was no evidence establishing the agency of John Gildemeister. What we have just said probably renders it unnecessary to pass upon this point. We will, however, consider it.

The negotiations conducted by John Gildemeister culminated in the written agreements signed by defendant. November 25, 1920, defendant wrote plaintiff's attorney:

"*Dear Sir:* You have been entirely misinformed about Miss Charvat's seven hundred and fifty ($750.00) dollars. I am not personally acquainted with Miss Charvat. Some time ago my brother suggested that he had several friends who had money they wanted to invest in a hotel lease. I told him to get the money and I would find a hotel. In the meantime I found the Clayton and put a deposit on it. He wasn't able to raise the full amount and the deal fell through and the deposit was lost."

The brother got the money from plaintiff. The agency was established. Plaintiff called the lessees of the Clayton and Montcalm hotels, who testified to their leases, and that defendant had no lease, without producing the writings. Defendant claims this was error, the leases being the best evidence. The testimony was admissible to negative leases held by defendant. *Rayner* v. *Lee*, 20 Mich. 384. There was no error in permitting a witness who had seen de-

fendant write his name, and claimed he was able to identify his signature, to testify that certain signatures were those of defendant. *Vinton* v. *Peck*, 14 Mich. 287; *Empire Manfg. Co.* v. *Stuart*, 46 Mich. 482; *Stretch* v. *Stretch*, 191 Mich. 416.

Counsel seem to be of the opinion that section 12539, 3 Comp. Laws 1915, was enacted for the purpose of settling the method of proving handwriting and signatures. That statute merely extends one method of evidence by permitting specimens of handwriting or the signature of a person, made before suit is brought, and admitted to be genuine, or so proved to the satisfaction of the court, to be used for the purpose of comparison. The statute does not at all disturb the rule permitting a signature to be proved by the testimony of any one who has seen the person write and is familiar with his signature and testifies he can identify the same. Here the witness testified that he had seen the defendant write, and could identify his signature, and that defendant's signature was on all three exhibits. Defendant offered no proof at the trial. The trial judge denied defendant's motion for a directed verdict and instructed the jury to find a verdict for plaintiff for $1,250.

In a motion for a new trial defendant claimed the verdict was against the great weight of the evidence. With all the evidence in the case directly supporting plaintiff's claim, and no evidence on the part of defendant, we do not understand that in such a case the question of the weight of evidence arises. Counsel evidently have confused the question of weight of evidence with that of want of evidence. There is no merit in the contention. It was also urged in the motion for a new trial:

"That plaintiff relied upon an agency relating to real property and failed to prove said agency in writing."

As we understand the case plaintiff sued for fraud practiced upon her and not to establish any interest in real property.     The point raised does not fit the case.     It is urged:

"That the agreement relied upon by plaintiff was void for lack of consideration."

Plaintiff did not sue upon an agreement but to recover money obtained from her by false representations.     The action in such a case is not upon contract, and the contract, if one is made, only enters the issue as part of the evidence of the fraud.     The rule of law relative to consideration of contracts cuts no figure in an action for money procured by false and fraudulent representations.     We find no error.

The judgment is affirmed, with costs to plaintiff.

FELLOWS, McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.