SMITH, HINCHMAN & GRYLLS ASSOCIATES, INC. v CITY OF RIVERVIEW

1. PRINCIPAL AND AGENT—MUNICIPAL CORPORATIONS—BUILDING AUTHORITIES.

A city building authority was properly found to be an agent of the city where the city directly contracted for a planner's services, made change orders and approvals, and then transferred control of a project to the authority, reserving rights of approval of future planning, and subsequently withdrew from the arrangement, effectively terminating the agency.

2. PRINCIPAL AND AGENT—MUNICIPAL CORPORATIONS—BUILDING AUTHORITIES—SCOPE OF AUTHORITY—SETTLEMENT OF ACCOUNTS.

An agent has the implied power to carry out all acts necessary in execution of the principal's expressly conferred authority; thus the settlement of accounts for professional planning services is within the scope of authority of a building authority where a city has broadly granted it the authority for all future planning of a civic center project.

3. PRINCIPAL AND AGENT—SCOPE OF AUTHORITY—PURPOSE OF AGENCY.

Whether an act of an agent is within the authority granted depends upon the act's usual or necessary connection to accomplishing the purpose of the agency, and payment for professional services rendered is usually, if not necessarily, so connected.

4. MUNICIPAL CORPORATIONS—OFFICIAL RECORDS—PAYMENT FOR PROFESSIONAL SERVICES.

The failure of a defendant city to record officially changes made in the plans for a proposed civic center during study sessions held prior to or after the regular council meetings does not bar a plaintiff planner from recovery of payment for its professional services; the city cannot escape the consequences of its acts.

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur 2d, Agency § 21.

[2, 3] 3 Am Jur 2d, Agency § 68 *et seq.*

[4] 3 Am Jur 2d, Agency § 247 *et seq.*

Appeal from Wayne, William F. Hood, J. Submitted Division 1 June 11, 1974, at Detroit. (Docket No. 17148.) Decided October 7, 1974. Leave to appeal applied for.

Complaint by Smith, Hinchman & Grylls Associates, Inc., against the City of Riverview for recovery of fees for professional services rendered. Judgment for plaintiff. Defendant appeals. Affirmed.

*Beaumont, Smith & Harris* (by *Alfred E. Lindbloom),* for plaintiff.

*Logan & Huchla,* for defendant.

Before: J. H. GILLIS, P. J., and ALLEN and ELLIOTT,* JJ.

J. H. GILLIS, P. J. Defendant City of Riverview appeals the trial court's judgment finding it liable for plaintiff's services in planning a civic center complex. After plaintiff had completed the vast portion of its contracted-for services, defendant abandoned the civic center project. On appeal, we affirm.

In a contract, dated January 16, 1967, defendant engaged plaintiff to plan the construction of defendant's proposed civic center. Plaintiff became obligated to determine functional requirements and prepare schematic designs and cost estimates. After the plans were finalized, defendant intended to transfer control of the project to the Building Authority. The Authority would construct the center and lease it to defendant. The executed lease provided that the Authority would issue bonds for $4,115,000 to finance the project.

Negotiations began in 1967; late that year it

---

* Circuit judge, sitting on the Court of Appeals by assignment.

became clear that costs would exceed the proposed bond issue by approximately $400,000. The contract required council's approval of various phases. The approvals for phases I and II were given formally at regular council meetings; later approvals came informally. From 1967 through late 1968, informal "study sessions" were held before and after regular meetings involving plaintiff and the council. During these meetings changes were made in the scope of the project which delayed the target date for bid letting, and escalated the project's cost. By July 1, 1968 cost estimates exceeded $5,400,000. Confronted with the cost problem, testimony reveals that council contemplated additional financing from a revenue-generating golf course, ski hill, and senior citizens housing project, aptly denominated the "pie-in-the-sky" plan. Predictably, the plan never materialized. Meanwhile, council's fluctuation and delay together with skyrocketing construction costs generated ballooning project costs.

At a meeting attended by plaintiff, defendant, and the Building Authority, in late 1968, project control was transferred to the Authority with unanimous consent. Subsequently, the Building Authority agreed to pay plaintiff $224,000 for its services on the project, and $6,000 for services rendered in constructing the DPW building. The Building Authority had earlier decided to erect a more modest structure, and to relieve plaintiff of any further obligation concerning the proposed civic center complex. Plaintiff agreed to condition receipt of payment on the sale of the bonds, subject to unconditional payment by June 1, 1969. Thereafter, defendant notified the Authority it would not perform its lease, thus causing abandonment of the civic center project. Absent a revenue

source, the Authority could not reimburse plaintiff for its services.

Defendant claims that the trial court erred in finding the Authority was defendant's agent. It claims the Authority was a separate and distinct corporation, whose acceptance of plaintiff's proposed settlement of accounts is not binding. Defendant attempted to distinguish the agency relationship in *Smith, Hinchman & Grylls v River Rouge,* 374 Mich 514; 132 NW2d 682 (1965). Defendant did not succeed. If anything, the instant case makes a more persuasive case for the imposition of liability. Here, defendant directly made the contract for plaintiff's services; it made the change orders and approvals; it transferred project control to the Authority. Council conferred on the Authority all responsibility for future planning, subject to Riverview's rights of approval reserved under the lease. Indeed, defendant's withdrawal from the lease effectively terminated the agency.

Defendant's alternative theory, that the Building Authority exceeded its powers in accepting plaintiff's proposed settlement, is lacking in merit. Having broadly granted the authority for all future planning of the civic center project, defendant cannot claim that settlement of accounts for professional planning services lies outside the scope of that authority. Agents have the implied power to carry out all acts necessary in executing defendant's expressly conferred authority. 1 Michigan Law & Practice, Agency, § 33, p 325. *Emery v Ford,* 234 Mich 11; 207 NW 856 (1926); *Mossman v Millenbach Motor Sales,* 284 Mich 562; 280 NW 50 (1938); 2A CJS, Agency, § 154, p 779. Whether the act in question is within the authority granted depends upon the act's usual or necessary connection to accomplishing the purpose of the agency.

CJS, *supra; cf. Park v Moorman Mfg Co,* 121 Utah 339; 241 P2d 914 (1952). Clearly, payment for professional services rendered is usually, if not necessarily, connected to accomplishing the agency's purpose, *i.e.,* the planning and development of a civic center complex. Defendant's *ultra vires* contention is erroneous.

Next, defendant contends that the failure of its minutes to contain official recording of the changes made during the study sessions should bar recovery. That the meetings were held is uncontroverted. The failure to record cannot permit defendant to escape the consequences of its acts, especially when plaintiff sought only to supplement rather than change the official records. *McGaughan v West Bloomfield Twp,* 268 Mich 553; 256 NW 545 (1934); *American LaFrance & Foamite Industries, Inc v Village of Clifford,* 267 Mich 326; 255 NW 596 (1934).

Finally, we do not think the trial court erred in finding that plaintiff did not breach the contract by "over-designing" the civic center project. Testimony reveals that the responsibility for the gap between the proposed bond issue and project cost lies indubitably with defendant.

Affirmed. Costs to plaintiff.

All concurred.