ELEZOVIC v FORD MOTOR COMPANY

Docket No. 267747. Submitted August 2, 2006, at Lansing. Decided January 25, 2007, at 9:00 a.m. Leave to appeal sought.

Lula and Joseph Elezovic brought an action in the Wayne Circuit Court against the Ford Motor Company and Daniel P. Bennett under the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, seeking damages for alleged sexual harassment resulting from a hostile work environment. The plaintiffs alleged that Bennett, a supervisor at the Ford plant where Lula Elezovic worked, exposed himself to her, requested oral sex, and repeatedly engaged in other sexually offensive conduct. The trial court, Kathleen I. Macdonald, J., granted directed verdicts in favor of the defendants. The Court of Appeals, JANSEN, P.J., and NEFF, J. (KELLY, J., concurring), affirmed, holding that it was bound to follow the rule in *Jager v Nationwide Truck Brokers, Inc*, 252 Mich App 464 (2002), that a supervisor engaging in activity prohibited by the CRA may not be held individually liable for violating a plaintiff's civil rights. 259 Mich App 187 (2003). The Court stated that, were it not bound by MCR 7.215(J) to follow *Jager*, it would have reached the opposite result. On appeal, the Supreme Court overruled *Jager* to hold that an agent of an employer may be held individually liable under the CRA, and remanded this case to the trial court for further proceedings regarding Bennett. 472 Mich 408 (2005). On remand, the trial court granted Bennett's motion for summary disposition on the ground that he was not functioning as an agent of Ford under the CRA when he committed the claimed acts of sexual harassment. Lula Elezovic appealed, and Bennett cross-appealed by delayed leave granted, challenging the trial court's denial of his renewed pretrial motion for summary disposition of the hostile work environment claim on its merits.

The Court of Appeals *held*:

1. The trial court erred in concluding that, because Ford had not given Bennett the authority to create a sexually hostile work environment, he was not functioning as an agent of Ford when he allegedly committed the unlawful acts of discrimination. Under the CRA, the term "employer" includes an agent of the employing entity. Agents are persons to whom the employing agency delegates supervisory power and authority over subordinates. An

agent can be held directly and individually liable for engaging in discriminatory behavior in violation of the CRA while acting as the victim's employer. This conclusion is consistent with the Legislature's intent to eradicate the evil of sexual discrimination in the workplace, with prevailing law related to torts committed by agents, and with the rule that remedial statutes must be construed liberally to suppress the evil and advance the remedy. The narrower construction urged by the dissent would effectively insulate the tortfeasor agent from personal accountability for creating the very conditions that the CRA was enacted to prevent. Contrary to the dissent's contention, the common-law agency principles on which courts have relied to determine whether to hold employers liable for harassment that their employees committed are not applicable here, because this case involves direct, not vicarious, liability. Therefore, if Elezovic can establish a prima facie case of hostile work environment sexual harassment against Bennett, absent the respondeat superior requirement, she may be entitled to damages for which Bennett is individually liable.

2. The trial court did not err in denying Bennett's motion for summary disposition on the ground that Elezovic's allegations of hostile work environment sexual harassment were insufficient as a matter of law. Elezovic presented evidence that, while Bennett was her supervisor, he repeatedly engaged in sexual conduct in her presence that a reasonable person would conclude was hostile, intimidating, or offensive. Although Elezovic did not supply specific dates and times in connection with her allegations, she has nonetheless established a genuine issue of material fact regarding whether Bennett subjected her to a hostile work environment.

Reversed and remanded for further proceedings.

TALBOT, J., dissenting, stated that because the undisputed facts reflect that, under common-law agency principles, Bennett's acts of sexual harassment occurred outside the scope of his authority as a Ford superintendent and violated Ford's antidiscrimination policy, Bennett was not acting as Ford's agent when he committed the alleged acts of sexual harassment, and he therefore does not meet the definition of an "employer" under the CRA. Accordingly, the trial court properly granted Bennett summary disposition with respect to Elezovic's CRA claim.

1. CIVIL RIGHTS — CIVIL RIGHTS ACT — EMPLOYERS — AGENTS — INDIVIDUAL LIABILITY.

An agent of an employer may be held individually liable under the Civil Rights Act for sexually harassing an employee in the workplace (MCL 37.2101 *et seq.*).

2. CIVIL RIGHTS — CIVIL RIGHTS ACT — EMPLOYERS — AGENTS — DEFINITION.

  An agent of an employer, for purposes of the Civil Rights Act, is a
  person to whom an employing entity has delegated supervisory
  power and authority to act on its behalf (MCL 37.2101 *et seq.*).

3. CIVIL RIGHTS — CIVIL RIGHTS ACT — EMPLOYERS — AGENTS — SCOPE OF
  AUTHORITY.

  An agent of an employer may be held individually liable for violating
  the Civil Rights Act in the workplace regardless of whether the
  underlying acts were outside the scope of the agent's authority
  because an action for individual liability does not seek to hold the
  principal liable for the agent's acts (MCL 37.2101 *et seq.*).

*Edwards & Jennings, P.C.* (by *Alice B. Jennings*), for
Lula Elezovic.

*Kienbaum Opperwall Hardy & Pelton, P.L.C.* (by
*Julia Turner Baumhart* and *Elizabeth Hardy*), for
Daniel Bennett.

Before: CAVANAGH, P.J., and SMOLENSKI and TALBOT,
JJ.

CAVANAGH, P.J. This appeal follows the remand of this
matter to the circuit court by our Supreme Court[1] for
consideration of plaintiff Lula Elezovic's sexual harass-
ment claim premised on a hostile work environment
theory, MCL 37.2103(i)(*iii*), against her former super-
visor, defendant Daniel Bennett, only.[2] On remand, the
circuit court granted defendant's motion for summary
disposition on the ground that, under the Michigan
Civil Rights Act (CRA), MCL 37.2101 *et seq.*, defendant
was not functioning as an "agent" of the Ford Motor
Company when he committed the charged acts of sexual
harassment. Plaintiff appeals this decision. Defendant
cross-appeals by delayed leave granted, challenging the

---

[1] *Elezovic v Ford Motor Co*, 472 Mich 408; 697 NW2d 851 (2005).

[2] Daniel Bennett will be referred to as "defendant" in this opinion.

trial court's denial of his renewed pretrial motion for summary disposition of plaintiff's hostile work environment claim on its merits.

Because the facts related to this matter have been extensively detailed in previous opinions, we reiterate only the salient facts here. See *Elezovic v Ford Motor Co*, 472 Mich 408, 411-418; 697 NW2d 851 (2005); *Elezovic v Ford Motor Co*, 259 Mich App 187, 190-191; 673 NW2d 776 (2003). Plaintiff was an hourly production worker at Ford's Wixom assembly plant when she was allegedly sexually harassed by defendant, her supervisor. She brought sexual harassment claims against both Ford and defendant. Following a three-week jury trial, the trial court granted defendants' motion for a directed verdict, holding that plaintiff failed to establish a prima facie case of sexual harassment against either Ford or defendant.

On appeal, this Court affirmed the trial court's decisions. With regard to defendant, this Court relied on the then-recent case of *Jager v Nationwide Truck Brokers, Inc*, 252 Mich App 464, 485; 652 NW2d 503 (2002), which held that a supervisor may not be held individually liable for violating the CRA. *Elezovic*, 259 Mich App at 197, 202. Our Supreme Court granted leave to appeal, and affirmed with regard to the issue of Ford's liability. *Elezovic*, 472 Mich at 430. However, the Court overruled the *Jager* holding, concluding that an agent who sexually harasses an employee in the workplace can be held individually liable under the CRA. *Id*. at 411. The Court remanded the matter to the circuit court for further proceedings regarding defendant. *Id*. at 431. As noted above, on remand, the circuit court granted defendant's renewed motion for summary disposition on the ground that defendant was not function-

ing as an "agent" of Ford when he committed the charged acts of sexual harassment. This appeal followed.

Plaintiff argues that the trial court erred in concluding that defendant was not functioning as an "agent" of Ford under the CRA when he committed the charged acts of sexual harassment and, thus, could not be held individually liable. We agree.

This Court reviews de novo the ruling on a motion for summary disposition. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). Although the trial court did not specify under which subrule of MCR 2.116(C) it found summary disposition appropriate, because the court looked beyond the pleadings, it appears that the decision was premised on MCR 2.116(C)(10). MCR 2.116(C)(10) tests the factual support of a claim and requires this Court to consider the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact warranting a trial exists. *Walsh, supra.*

This Court also reviews de novo issues of statutory interpretation. *Bloomfield Twp v Oakland Co Clerk*, 253 Mich App 1, 9; 654 NW2d 610 (2002). Our purpose in reviewing questions of statutory construction is to discern and give effect to the Legislature's intent. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). We begin our analysis by examining the plain language of the statute. If the language is unambiguous, no judicial construction is required or permitted and the statute must be enforced as written. *Id.*, quoting *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). The undefined words of a statute must be given their plain and ordinary meaning, which may be ascertained by looking at dictionary

definitions. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

The CRA is remedial and thus must be "liberally construed to suppress the evil and advance the remedy." *Eide v Kelsey-Hayes Co*, 431 Mich 26, 34; 427 NW2d 488 (1988). One of the purposes of the CRA, specifically MCL 37.2202, is to eradicate particular forms of discrimination in the workplace. See *Champion v Nation Wide Security, Inc*, 450 Mich 702, 713; 545 NW2d 596 (1996). "MCL 37.2202 forbids *any* employer from engaging in acts of discrimination that are prohibited by the CRA." *McClements v Ford Motor Co*, 473 Mich 373, 386; 702 NW2d 166, amended 474 Mich 1201 (2005) (emphasis in original). One form of discrimination the CRA prohibits is discrimination based on sex. MCL 37.2202(1). Thus, an employer shall not discriminate on the basis of sex, which includes sexual harassment. MCL 37.2202(1)(a); MCL 37.2103(i). The CRA is the exclusive remedy for a claim based on sexual harassment. *McClements, supra* at 383.

There are two categories of sexual harassment: (1) quid pro quo and (2) hostile work environment. See *Chambers v Trettco, Inc*, 463 Mich 297, 310-311; 614 NW2d 910 (2000). At issue in this case is the latter type, hostile work environment sexual harassment, which is defined to include

> unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
>        \*    \*    \*
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . . environment. [MCL 37.2103(i).]

When the hostile work environment is created by the actions of coworkers and other coemployees, the alleged victim seeking a remedy under the CRA must file a claim of hostile work environment sexual harassment against her[3] employer on a vicarious liability theory. See, e.g., *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 791-792; 685 NW2d 391 (2004). Thus, to establish a prima facie case of hostile work environment sexual harassment, the plaintiff employee must prove (1) that she belonged to a protected group; (2) that she was subjected to communication or conduct on the basis of sex; (3) that she was subjected to unwelcome sexual conduct or communication; (4) that the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with her employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. See *Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993). Respondeat superior liability exists when an employer has adequate notice of the harassment and fails to take appropriate corrective action. See *Chambers, supra* at 318-319.

However, "if an *employer* is accused of sexual harassment, then the respondeat superior inquiry is unnecessary because holding an employer liable for personal actions is not unfair." *Radtke, supra* at 397 (emphasis in original). Thus, when the hostile work environment is created by the actions of the employer, the alleged victim seeking a remedy under the CRA may file such a claim against her employer premised on a direct theory of liability. Similarly, this case involves not *vicarious liability* but the individual liability of the alleged sexual

---

[3] We use gender-specific pronouns in this opinion merely for convenience; obviously, the legal principles involved would be equally applicable were the genders reversed.

*harasser, who is a purported "agent" of the employing entity, not a coworker.*

In this case, defendant argued in the trial court on remand that plaintiff's case had to be summarily dismissed because defendant was never vested with authority to create a sexually hostile work environment; i.e., defendant "was not Ford's agent for purposes of creating a sexually hostile work environment." The trial court agreed with defendant, granting defendant's motion for summary disposition on the ground that defendant was not functioning as an agent at the time he committed the alleged unlawful acts of discrimination. We conclude that both defendant and the trial court misconstrued the applicable legal principles of agency. This unjust and unreasonable result permits an agent to pursue and accomplish his illegal objective by using his position and power, but immunizes him from liability because he was not supposed to do that. In other words, in this case, defendant could not be held personally liable for violating the purported victim's civil rights because Ford did not tell him to sexually harass her. We do not believe that the Legislature intended this incongruous result.

Article 2 of the CRA defines an "employer" as "a person who has 1 or more employees, and includes an agent of that person."[4] MCL 37.2201(a). Our Supreme Court, in this case, declared that an agent of an employer is considered an "employer" for purposes of the CRA, holding:

> [W]hen a statute says "employer" means "a person who has 1 or more employees, and *includes an agent of that*

_____

[4] "[W]hen a statute specifically defines a given term, that definition alone controls." *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996).

*person,*" it must, if the words are going to be read sensibly, mean that the Legislature intended to make the agent tantamount to the employer so that the agent unmistakably is also subject to suit along with the employer. (Emphasis added.) Indeed, when we said in *Chambers* [*v Trettco, Inc*, 463 Mich 297, 320; 614 NW2d 910 (2000)], that categorizing a given pattern of misconduct allows the Court "to determine whether the sexual harasser's *employer*, in addition to the sexual harasser *himself*, is to be held responsible for the misconduct," we believe we said as much. (Emphasis in original.) Accordingly, we reject the argument that including "agent" within the definition of "employer" serves only to provide vicarious liability for the agent's employer and we conclude that it also serves to create individual liability for an employer's agent. [*Elezovic*, 472 Mich at 420.]

The Court also specifically held:

> Because we find that (1) inclusion of an "agent" within the definition of the word "employer" is not limited to establishing vicarious liability for the agent's employer, but in fact means agents are considered employers, (2) federal decisions construing Title VII should not be followed because it would lead to a result contrary to the text of our CRA, and (3) the amendment history of the CRA does not preclude a finding of individual liability, we conclude that liability under our CRA applies to an agent who sexually harasses an employee in the workplace. [*Id.* at 426.]

Again, our Supreme Court reiterated in its conclusion that "[b]ecause employers can be held liable under the CRA, and because agents are considered employers, agents can be held liable, as individuals, under the CRA." *Id.* at 431.

The clear result of the Supreme Court's conclusion is that if the purported harasser is an agent of the employing entity, the harasser is treated as if he *is* the employer for purposes of the CRA. In other words, the harasser may be held directly and individually liable if

he engaged in discriminatory behavior in violation of
the CRA while acting in his capacity as the victim's
employer. Therefore, a respondeat superior analysis is
not necessary with respect to the agent's direct and
individual liability because this is not a claim of vicari-
ous liability. See *Chambers, supra* at 311; *Radtke,
supra.*

Next, we must determine when one is considered an
"agent" and, thus, an employer under the CRA. The
CRA does not define the term "agent," so we may turn
to a dictionary for guidance on its plain and ordinary
meaning. See *Koontz, supra.* An agent is "a person or
business authorized to act on another's behalf" and "a
person or thing that acts or has the power to act."
*Random House Webster's College Dictionary* (1997).
And, if "agent" is considered a legal term, its meaning is
the same: "[o]ne who is authorized to act for or in place
of another." Black's Law Dictionary (7th ed). These
definitions are consistent with general agency prin-
ciples, *Stephenson v Golden (On Rehearing),* 279 Mich
710, 734-735; 276 NW 849 (1937), and the fact that
"most employers are corporate entities that cannot
function without delegating supervisory power." *Cham-
pion, supra* at 713. We conclude that it is through this
delegation of general supervisory power and authority
that one becomes an "agent" of the employing entity
and, thus, an employer within the context of the CRA.

Specifically, persons to whom an employing entity
delegates supervisory power and authority to act on its
behalf are "agents," as distinguished from coemployees,
subordinates, or coworkers who do not have supervi-
sory powers or authority, for purposes of the CRA. If
this agent is also the alleged sexual harasser, the agent
is considered an employer under the CRA and may be
directly and individually liable for this tort against the

victim, whether or not the employing entity is liable. Again, MCL 37.2202 prohibits *any* employer from engaging in acts of discrimination that are prohibited by the CRA. *McClements, supra* at 386.

Contrary to defendant's argument, the trial court's holding, and the dissent in this case, it is not necessary for a plaintiff to establish that a defendant was "functioning as an agent" when he committed the charged specific acts of sexual harassment charged. Almost invariably, the harasser is never acting within the scope of his agency when he breaks the law by sexually harassing a subordinate. As our Supreme Court has noted, "an employer rarely authorizes an agent to break the law or otherwise behave improperly . . . ." *Champion, supra* at 712 n 7. The issue is not whether the harassing acts were within the scope of the agent's authority—the plaintiff is not attempting to hold the principal liable for the agent's acts. The issue is whether the harasser was an agent, one vested with supervisory power and authority, at the time the harassing acts were being perpetrated against the victim; if so, the harasser is considered an employer for purposes of the CRA.

We disagree with the dissent's contention that the common-law agency principles on which the Court relied in *Chambers, supra* at 311, "in determining when an employer is liable for sexual harassment committed by its employees," are relevant in this case that does *not* involve vicarious liability. The dissent's reliance on other cases involving claims of vicarious liability is not persuasive. The dissent's claim that we have altered "the elements necessary to establish a prima facie case of hostile work environment sexual harassment by eliminating the respondeat superior requirement" is accurate, but only with respect to claims of direct liability. First, sexual harassment is an intentional tort.

*McClements, supra* at 381-382. Thus, when the claim of sexual harassment against an employer is for direct liability, and not vicarious liability, intent need not be inferred through a respondeat superior analysis, i.e., it need not be established that the employer had reasonable notice of the alleged harassment and failed to adequately investigate and remedy the situation because the employer *committed* the harassment. See *Radtke, supra* at 396-397, quoting *Downer v Detroit Receiving Hosp*, 191 Mich App 232, 234; 477 NW2d 146 (1991). Second, as discussed above, our Supreme Court in *Radtke, supra* at 397, held that "if an *employer* is accused of sexual harassment, then the respondeat superior inquiry is unnecessary . . . ." (Emphasis in original.)

The harassing agent, then, is held to the same standard as an employer; employers shall not discriminate against employees. We note Justice WEAVER's concern in her partial dissent with regard to the issue of holding agents, like supervisors, who sexually harass liable for their conduct, while not holding coemployees liable for similar harassing actions. *Elezovic*, 472 Mich at 437. But we conclude that agents who harass should not be treated in the same manner as coemployees who harass because agents are not similarly situated to coemployees. For example, agents have influence and power over their victim that coemployees do not enjoy, such as control over their victim's employment circumstances and opportunities like promotions, bonuses, overtime options, raises, shift and job assignments, and terminations. In other words, in significant part, these agents are the employers. It is for these reasons, as well as many others, that the victim is placed in the no-win situation of either risking her livelihood by reacting to or reporting the unlawful behavior or accepting the harassment when that harassment is perpetrated by a

supervisor. The harasser, left unchecked, is then empowered to escalate the behavior so that sexual harassment becomes a condition of employment, using the fear of economic or other reprisal as a persuasive threat. This is the force of evil that the CRA has attempted to eradicate.

As our Supreme Court previously noted,

> [s]exual harassment was targeted by the Civil Rights Act because it is both "pervasive" and "destructive, entailing unacceptable personal, organizational, and societal costs."

> \* \* \*

> "Sexual harassment should be explicitly defined and prohibited because it is a demeaning, degrading, and coercive activity directed at persons on the basis of their sex, the continuation of which is often contingent on the harasser's economic control over the person being harassed. It should be outlawed because it violates basic human rights of privacy, freedom, sexual integrity and personal security." [*Radtke, supra* at 380-381, quoting House Legislative Analysis, HB 4407, August 15, 1980.]

Agents have been granted supervisory powers that do not, and should not, come without the concomitant responsibility attendant to such powers. They are, for all intents and purposes, the employing entity's front-line defense against this type of unlawful behavior occurring in the workplace. When an agent instead becomes the sexual harasser, immunity from the reach and teeth of the CRA should not be the reward. The Legislature's intent is clear—the eradication of sexual harassment as a destructive and hazardous condition in the workplace. Employers, including agents, share the burdens and the benefits of meeting the requirements of the CRA. The effect of the narrow construction posited by defendant in this case, as well as the trial

court and the dissent, is to insulate the tortfeasor agent from personal accountability for his role in creating the very conditions the CRA was enacted to prevent under the guise of his "agent" capacity, which he flouted when he chose to engage in such acts. This position is untenable—an agent is an agent whether he is abiding by or breaking the law.

This conclusion is consistent with prevailing law related to torts committed by agents. "It is a familiar principle that the agents and officers of a corporation are liable for torts which they personally commit, even though in doing so they act for the corporation, and even though the corporation is also liable for the tort." *Warren Tool Co v Stephenson*, 11 Mich App 274, 300; 161 NW2d 133 (1968); see, also, *Hartman & Eichhorn Bldg Co, Inc v Dailey*, 266 Mich App 545, 549; 701 NW2d 749 (2005). And " 'a corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation.' " *People v Brown*, 239 Mich App 735, 739-740; 610 NW2d 234 (2000), quoting *Attorney General v Ankersen*, 148 Mich App 524, 557; 385 NW2d 658 (1986). See, also, 3 Am Jur 2d, Agency, § 298, p 668. Thus, it is clear that such agents are personally liable for unlawful conduct committed in their capacity as agents.

Our holding is also consistent with the rule that remedial statutes like the CRA are to be construed liberally "to suppress the evil and advance the remedy." *Eide, supra* at 34. The evil here is discrimination, particularly sexual harassment, in the workplace. See *Champion, supra* at 713. With regard to the imposition of vicarious liability in the case of sexual harassment, our Supreme Court rationalized that "when an em-

ployer gives its supervisors certain authority over other employees, it must also accept responsibility to remedy the harm caused by the supervisors' unlawful exercise of that authority." *Id.* at 712. That rationale is even more cogent with regard to the imposition of personal liability against the tortfeasor agent who accepted the delegated supervisory power only to use it to demean, degrade, and coerce his subordinates on the basis of their sex. See *Radtke, supra* at 381, quoting House Legislative Analysis, HB 4407, August 15, 1980. Allowing the tortfeasor agent to violate the CRA without legal consequence "will do little, if anything, to eradicate discrimination in the workplace." See *Champion, supra* at 713.

In summary, under the CRA, an "employer" includes an agent of the employing entity. "Agents" are persons to whom the employing agency delegates supervisory power and authority over subordinates. An agent can be held directly and individually liable if he engaged in discriminatory behavior in violation of the CRA while acting in his capacity as the victim's employer. Therefore, if plaintiff can establish a prima facie case of hostile work environment sexual harassment against defendant, her supervisor, absent the respondeat superior requirement, she may be found entitled to damages for which defendant is individually liable. Therefore, the trial court's grant of defendant's motion for summary disposition on the ground that defendant was not functioning as an agent of Ford when he committed the charged acts of sexual harassment is reversed.

On cross-appeal, defendant argues that the trial court erred in denying his motion for summary disposition of plaintiff's hostile work environment sexual harassment claim because her sexual allegations were insufficient as a matter of law. Again, we disagree.

To establish a prima facie case of sexual harassment based on a hostile work environment against her employer, plaintiff had to establish (1) that she was a member of a protected group, (2) that she was subjected to communication or conduct on the basis of sex, (3) that she was subjected to unwelcome sexual conduct or communication, and (4) that the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with her employment or created an intimidating, hostile, or offensive work environment. *Radtke, supra* at 382. Defendant claims that plaintiff failed to establish the fourth element.

"[W]hether a hostile work environment existed shall be determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Id.* at 394. Plaintiff presented evidence that, from November 1996 when defendant became her supervisor through approximately the summer of 1999, (1) defendant would frequently look at plaintiff and lick his lips in a sexually suggestive manner, (2) defendant would frequently grab his crotch and ask plaintiff to perform oral sex on him, (3) defendant asked plaintiff if her "boobs" were real and told her that he would like to stick his "dick" between them (but this may have occurred outside the period of limitations), (4) there were three or four instances where defendant was "playing with himself" and, at least once, said, "[L]ick it Lula, lick it," (5) defendant called plaintiff a "bitch" at least once, (6) defendant grabbed plaintiff's arm as she was leaving a restroom and said, "[C]an we go inside and I'll wipe," (7) defendant placed his hand on his groin and asked, "You want some, you want some, you want some?" and (8) defendant went to an unoccu-

pied room where plaintiff was using the phone and "played with himself" while saying, "You want some of this" and "That makes you feel good."

Objectively examining the totality of the circumstances, a reasonable person could conclude that defendant's conduct was unreasonable, i.e., it was hostile, intimidating, or offensive. See *Radtke, supra* at 386-387. Although we recognize that plaintiff was unable to give specific dates and times with regard to many of the instances of claimed sexual harassment, she has established, at least, a genuine issue of material fact regarding whether she was subjected to a hostile work environment as a consequence of defendant's conduct. See *Quinto v Cross & Peters Co*, 451 Mich 358, 369-370; 547 NW2d 314 (1996); *Radtke, supra.*

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

SMOLENSKI, J., concurred.

TALBOT, J. (*dissenting*). I respectfully dissent. Specifically, I believe the majority's conclusion, holding defendant Daniel P. Bennett individually liable under the Michigan Civil Rights Act (CRA), MCL 37.2101 *et seq.*, as an agent of the Ford Motor Company, is inconsistent and incompatible with the definitional requirements necessary to establish Bennett as an agent and, consequently, as an employer under the CRA. I would, therefore, affirm the trial court's decision to grant summary disposition in favor of Bennett on plaintiff Lula Elezovic's hostile work environment claim.

This case is once again before this Court, having already generated two published decisions in *Elezovic v Ford Motor Co*, 259 Mich App 187; 673 NW2d 776 (2003), aff'd in part and rev'd in part 472 Mich 408

(2005). This appeal arises from allegations by plaintiff that, while an employee of the Ford Motor Company, she was subject to ongoing sexual harassment by Bennett, her former supervisor. Specifically, plaintiff appeals the grant of summary disposition in favor of Bennett on plaintiff's hostile work environment claim based on the trial court's determination that defendant was not acting as "an agent" of Ford when he committed the alleged acts of sexual harassment and, therefore, was not "an employer" for imposition of individual liability under the CRA.

This appeal is a necessary extension of the Supreme Court's analysis of plaintiff's claim of hostile work environment sexual harassment, *Elezovic v Ford Motor Co*, 472 Mich 408; 697 NW2d 851 (2005), in which the Court addressed the issue of individual liability under the CRA. The Supreme Court began its analysis by examining the language of the relevant statutory definitions. The Supreme Court noted that "the statute expressly defines an 'employer' as a 'person,' which is defined under MCL 37.2103(g) to include a corporation, and also states that an 'employer' includes an 'agent of that person.' MCL 37.2201(a)." *Id.* at 419-420. On the basis of this language, the Supreme Court determined that use of the term "agent" within the statutory definition of "employer" was not restricted solely to the establishment of vicarious liability of the agent's employer. Rather, the Supreme Court held that the term "agent" could also encompass the imposition of individual liability on an agent who engages in sexually harassing behavior. *Id.* at 426. The Supreme Court specifically declined to engage in the next step in the analysis and consider whether Bennett, as plaintiff's supervisor, qualified as an agent if, in harassing plaintiff, he acted beyond the scope of his authority. *Id.* at 422 n 20, 431. As a result, this Court must determine

whether an agent acting outside the scope of his authority can be defined as an "employer" in accordance with the CRA for imposition of individual liability.

"Through the Civil Rights Act, Michigan law recognizes that, in employment, freedom from discrimination because of sex is a civil right. MCL 37.2102 . . . . Employers are prohibited from violating this right, MCL 37.2202 . . . ." *Chambers v Trettco, Inc*, 463 Mich 297, 309; 614 NW2d 910 (2000). The CRA "expressly addresses an employer's vicarious liability for sexual harassment committed by its employees by defining 'employer' to include both the employer *and* the employer's agents. MCL 37.2201(a) . . . . " *Chambers, supra* at 310 (emphasis in original).

MCL 37.2201(a) defines the term "employer" as "a person who has 1 or more employees, and includes an agent of that person." The Michigan Supreme Court concluded in *Elezovic*, 472 Mich at 426, in relevant part, that "[b]ecause we find that . . . inclusion of an 'agent' within the definition of the word 'employer' is not limited to establishing vicarious liability for the agent's employer, but in fact means agents are considered employers," "liability under our CRA applies to an agent who sexually harasses an employee in the workplace." However, the Supreme Court in *Elezovic* did not hold or imply that Bennett had committed the alleged acts of harassment in his capacity as an agent of Ford, his employer. *Id.* at 422 n 20. In summarizing the relevant portion of its holding in *Elezovic*, the Supreme Court reiterated "that an agent *may* be individually sued under § 37.2202(1)(a)." *Id.* at 411 (emphasis added).

The majority appears to elevate this holding to the imposition of strict liability while ignoring the accepted definition of the term "agent," which is necessary to

establish Bennett as an "employer" for the imposition of individual liability. Specifically, the majority states:

> An agent can be held directly and individually liable if he engaged in discriminatory behavior in violation of the CRA while acting in his capacity as the victim's employer. Therefore, if plaintiff can establish a prima facie case of hostile work environment sexual harassment against defendant, her supervisor, absent the respondeat superior requirement, she may be found entitled to damages for which defendant is individually liable. [*Ante* at 15.]

This effectively ignores both the prior caselaw determining the requirements for establishing liability under an agency relationship and, impliedly, alters the elements necessary to establish a prima facie case of hostile work environment sexual harassment by eliminating the respondeat superior requirement.

In responding to this dissent, the majority relies on an isolated statement from *Radtke v Everett*, 442 Mich 368, 397; 501 NW2d 155 (1993), that "if an *employer* is accused of sexual harassment, then the respondeat superior inquiry is unnecessary . . . ." This reliance is misplaced. Notably, the *Radtke* decision was issued 12 years before the Supreme Court's ruling in *Elezovic*, and did not address the imposition of individual liability in the context of agency. *Radtke* is further distinguishable because, in that case, the harasser was coextensive with his business, being both owner and employer, and was effectively imputed to be the alter ego of the business rather than an agent. Hence, use of the term "employer" in *Radtke* carries a vastly different meaning and connotation and, consequently, was not used by the Supreme Court in *Elezovic* in the same context as currently advocated for purposes of imposing individual liability on an agent. In addition, the majority fails to note that *Radtke* is inapposite to its reasoning, because

it required proof of vicarious liability in a hostile work environment action, stating, in relevant part: " 'Strict liability is illogical in a pure hostile environment setting. In a hostile environment case, no *quid pro quo* exists. The supervisor does not act as the company; the supervisor acts outside the scope of actual or apparent authority to hire, fire, discipline, or promote.' " *Radtke, supra* at 396 n 46, quoting *Steele v Offshore Shipbuilding, Inc,* 867 F2d 1311, 1316 (CA 11, 1989) (internal quotation omitted). Hence, the majority's failure to incorporate the longstanding requirements and definitions of agency in order to impose strict liability for an agent, as an employer, in the context of hostile work environment sexual harassment, is in error.

The question central to the resolution of this case is whether Bennett acted as Ford's agent when he committed the claimed acts of sexual harassment. The CRA does not specifically define the term "agent" of the employer, see MCL 37.2201, and no published decision of this Court or the Michigan Supreme Court has yet interpreted the contours of this term as it appears in the CRA. The Michigan Supreme Court has explained, however, that the definition of the employer-agent relationship depends on principles of common-law agency: "Because the Civil Rights Act expressly defines 'employer' to include agents, we rely on common-law agency principles in determining when an employer is liable for sexual harassment committed by its employees." *Chambers, supra* at 311.

Michigan has long recognized the following general common-law principles governing principal-agent relationships:

> "An agent is a person having express or implied authority to represent or act on behalf of another person, who is called his principal." Bowstead on Agency (4th Ed.), p. 1.

"An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do." 2 C. J. S. p. 1025. [*Stephenson v Golden (On Rehearing)*, 279 Mich 710, 734-735; 276 NW 849 (1937).]

"Among those attributes is the power to do all that is usual and necessary to accomplish the object for which the agency was created." *Leo Austrian & Co v Springer*, 94 Mich 343, 350; 54 NW 50 (1892); see also *Field v Jack & Jill Ranch*, 343 Mich 273, 278-279; 72 NW2d 26 (1955) (explaining that an agent's powers are prima facie coextensive with the business entrusted to his care, and that the agent's authority includes "not only those things he is expressly told to do, but those things the principal knowingly acquiesces in his doing").

The parties do not dispute that Bennett was a Ford Motor Company superintendent, and that in this position he was an agent with actual authority, express or implied, to bind Ford regarding certain employment decisions affecting subordinate employees. *Alar v Mercy Mem Hosp*, 208 Mich App 518, 528; 529 NW2d 318 (1995). The majority contends that because Bennett unquestionably occupied some agency position with respect to the Ford Motor Company, he meets the definition of an "agent" subject to individual liability for sexual harassment under MCL 37.2201(a). But the majority's contention disregards common-law principles delineating and defining agency relationships.

The term "agent" in MCL 37.2201(a) takes into account common-law principles regarding agency relationships, under which Bennett cannot be liable for the alleged acts of sexual harassment because they did not occur in the scope of any authority, express or implied,

that Ford gave him. "Agents have the implied power to carry out all acts necessary in executing defendant's expressly conferred authority. Whether the act in question is within the authority granted depends upon the act's usual or necessary connection to accomplishing the purpose of the agency." *Smith, Hinchman & Grylls Assoc, Inc v City of Riverview*, 55 Mich App 703, 706; 223 NW2d 314 (1974) (internal citations omitted); see also *Grossman v Langer*, 269 Mich 506, 510; 257 NW 875 (1934) (reciting the "general rule ... that the powers of an agent are *prima facie* coextensive with the business intrusted to his care").

Although plaintiff testified that Bennett committed several offensive acts tending to constitute sexual harassment in the workplace, these acts of discrimination do not have any "usual or necessary connection to accomplishing the purpose[s] of" Bennett's responsibilities as Ford's superintendent. *Smith, Hinchman & Grylls Assoc, supra* at 706. As the Michigan Supreme Court has observed with respect to the potential vicarious liability, under common-law agency principles, of an employer for an employee's acts allegedly creating a hostile work environment, "[W]e have noted that ... *strict imposition of vicarious liability on an employer is illogical in a pure hostile environment setting because, generally, in such a case, the supervisor acts outside the scope of actual or apparent authority to hire, fire, discipline, or promote.*" *Chambers, supra* at 311 (emphasis added; internal quotations and citation omitted). Notably, Bennett's acts of sexual harassment also contravened Ford's antidiscrimination policy, which the parties agree governed their relationship with Ford. Although Bennett's acts of sexual discrimination violate the CRA, "[w]hen a purported agent is shown to have been acting outside the scope of the law, it is presumed that he was not acting within the scope of his

duties for the ... principal." *Rohe Scientific Corp v Nat'l Bank of Detroit*, 133 Mich App 462, 469-470; 350 NW2d 280 (1984), mod on other grounds on reh 135 Mich App 777 (1984), citing 3 CJS, Agency, § 493, p 391. Therefore, investing the term "agent" with the meaning ascribed to that term and the agency relationship under the common law, Bennett's acts of sexual harassment fall outside the actual authority that Ford vested in him. In other words, Bennett was not Ford's agent when he committed the acts of sexual harassment to which plaintiff testified. If Bennett was not Ford's agent, then he does not meet the definition of an "employer" in accordance with MCL 37.2201.

If interpretation of the term "agent" within MCL 37.2201(a) incorporates common-law agency concepts, then Bennett was not acting within his authority as Ford's agent when he performed the acts of sexual discrimination allegedly constituting a hostile work environment, and therefore, could not face individual liability under the CRA. Contrary to the majority's assertion, this determination neither precludes the probability of a defendant facing individual liability under the CRA nor contravenes the overriding intent of the statute. Individual liability is applicable in cases of quid pro quo harassment "because the quid pro quo harasser, by definition, uses the power of the employer to alter the terms and conditions of employment," thereby fulfilling the definitional requirements of MCL 37.2201. *Chambers, supra* at 311.[1] In addition, in cases

---

[1] In addition, apart from the CRA, an individual agent conceivably could face individual liability in some circumstances for acts of discrimination that satisfy the elements of a tort. *Charvat v Gildemeister*, 222 Mich 286, 289; 192 NW 674 (1923) (observing that "in torts like this, the law does not consider agency at all but permits the wrongdoers to be sued jointly or severally"); *Burrows v Bidigare/Bublys, Inc*, 158 Mich App 175, 185; 404 NW2d 650 (1987) (concluding that "[t]he fact that the tortfeasor

where the elements of hostile work environment sexual harassment are fully and successfully established, the individual tortfeasor could also be subject to individual liability, thus fulfilling both the definitional requirements and language of the statute without the necessity of expanding the actual language of the statute to include the imposition of strict liability for conduct determined to be in violation of the act.

Because the undisputed facts reflect that Bennett's acts of sexual harassment occurred outside the scope of his authority as a Ford superintendent and violated Ford's antidiscrimination policy, the trial court properly granted Bennett summary disposition pursuant to MCR 2.116(C)(10) with respect to plaintiff's CRA-based claim that his acts of sexual discrimination created a hostile work environment.

---

was an employee or agent of another person or corporation does not make him immune from suit for his breach of the duty imposed by law"), superseded by statute on other grounds, see *Michigan Millers Mut Ins Co v West Detroit Bldg Co, Inc*, 196 Mich App 367; 494 NW2d 1 (1992).