# STATE OF MICHIGAN

# COURT OF APPEALS

SHANNON WOODS,

Plaintiff-Appellee,

v

DEPARTMENT OF CORRECTIONS,

Defendant-Appellant.

UNPUBLISHED
April 3, 2018

No. 333825
Wayne Circuit Court
LC No. 14-012000-CD

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

In this action brought under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, defendant appeals by leave granted[1] the trial court's order denying defendant's motion for summary disposition under MCR 2.116(C)(10). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

This case arises out of the alleged sexual harassment of plaintiff by her coworker, Ryan Johnson. In 2016, plaintiff brought this civil rights action against her employer, defendant, Michigan Department of Corrections. As amended, her complaint alleged multiple violations of the ELCRA, including sex discrimination (disparate treatment), retaliation, and sexual harassment (hostile work environment). Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that there existed no questions of fact related to whether plaintiff was discriminated against because of her gender or whether defendant retaliated against plaintiff on account of her filing her sexual harassment complaint.

The trial court denied defendant's motion for summary disposition, ruling that there remained several questions of fact to be litigated. The court specifically noted that there were questions of fact related to Johnson's status as an employee of defendant, whether defendant had notice of the harassment, whether defendant took sufficient action in response to any notice, and whether defendant took any adverse employment action against plaintiff in retaliation for her complaints of sexual harassment. This appeal followed.

---

[1] *Woods v Dep't of Corrections*, unpublished order of the Court of Appeals, entered August 4, 2016 (Docket No. 333825).

## I. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). Defendant moved for summary disposition pursuant to MCR 2.116(C)(10). A motion under this subrule tests the factual sufficiency of the plaintiff's complaint. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a motion under MCR 2.116(C)(10), this Court must consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). The motion is properly granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999).

## II. ANALYSIS

## A. HOSTILE WORK ENVIRONMENT CLAIM

In its first issue on appeal, defendant challenges the viability of plaintiff's sexual harassment (hostile work environment) claim. MCL 37.2202(1)(a) provides that an employer shall not

> [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Unlawful sex discrimination prohibited by MCL 27.2022(1) includes sexual harassment, MCL 37.2103(i). Further, "sexual harassment" is defined as follows in the statute:

> [U]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> * * *
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(i).]

Plaintiff alleges that defendant violated MCL 37.2103(i)(*iii*) by permitting a hostile work environment to exist.

In *Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993), our Supreme Court set forth the elements a plaintiff must prove to establish a prima facie case of hostile work environment based on sexual harassment:

(1) the employee belonged to a protected group;

(2) the employee was subject to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior.

Defendant contends that plaintiff cannot establish a prima facie case of hostile work environment based on sexual harassment because she cannot demonstrate (1) that Johnson was employed by defendant, (2) that Johnson's conduct interfered with plaintiff's employment, or (3) the existence of respondeat superior liability. We disagree. When viewing the evidence in the light most favorable to the non-moving party, it is apparent that questions of fact existed that remained to be litigated.

Initially, defendant asserts that it cannot be held liable under plaintiff's hostile work environment theory because at the time Johnson sent a picture of his genitals to plaintiff, he was "working for" the UAW, not defendant. The argument that Johnson was not an employee at the time he engaged in acts of alleged harassment ignores the fact that, as will be discussed later, plaintiff's hostile work environment claim is not premised solely on the sexually explicit text message that he sent. Plaintiff alleged that she was subject to Johnson's sexually harassing behavior immediately after she arrived at the Lawton office, in the fall of 2013. It is undisputed that as of the fall of 2013, Johnson was employed by defendant.[2] Accordingly, defendant has failed to show how the evidence demonstrates that Johnson was employed solely by a third-party when he allegedly engaged in acts of harassment.

---

[2] Moreover, with respect to Johnson's time while he was assigned to the UAW, the evidence shows that Johnson continued to receive his paycheck from defendant. Indeed, other employees who were similarly "on loan" to the UAW explained that during their assignment to the UAW, they were still state employees and they continued to be paid by the state. Furthermore, after plaintiff received the text message and then filed her internal complaint, it was defendant's *own* Internal Affairs (IA) division that investigated the harassment claims. Additionally, Labor Relations Manager Jonathan Patterson stated in an interview with IA that Johnson "was an employee of the Michigan Department of Corrections." Plaintiff of course will carry the burden at trial of proving to the satisfaction of the factfinder that Johnson was defendant's employee at the relevant times. However, viewing the evidence in the light most favorable to plaintiff, as we are constrained to do at this stage, we conclude that plaintiff is not foreclosed as a matter of law from making such a showing at trial, as the evidence shows that defendant's conduct demonstrated that it viewed Johnson as its employee.

Next, defendant argues that it cannot be held liable for creating a hostile work environment because at the time Johnson sent the text of his genitals, he was off premises and it was after working hours. The parties have not cited, and we have not located, a binding decision addressing whether an employer may be liable for harassment perpetrated by a coworker after hours and away from the workplace setting.[3] However, we need not decide whether off-premises harassment is actionable because plaintiff's claims are not premised solely on the receipt of the sexually explicit text message. Plaintiff has additionally alleged that she was sexually harassed by Johnson on defendant's premises during work hours, and as further discussed below, the evidence in support of the theory that these events created a hostile work environment was sufficient to withstand summary disposition.

Defendant argues that plaintiff cannot establish that any alleged harassing conduct interfered with her employment. We disagree. A hostile work environment claim "is actionable when the work environment is so tainted that, in the totality of the circumstances, a reasonable person in the plaintiff's positon would have perceived the conduct at issue as substantially interfering with employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Radtke*, 442 Mich at 372.

Plaintiff presented evidence that Johnson continually and purposefully invaded plaintiff's personal space at work in a sexually suggestive manner. Johnson frequently came into plaintiff's cubicle, uninvited, and sat on the corner of her desk. He strategically placed his body in a position where plaintiff would literally become face-to-face with the area between Johnson's legs. When plaintiff complained, Johnson simply laughed. If plaintiff would attempt to move away, Johnson would move closer. That Johnson's conduct was extreme, intimidating, and outrageous is substantiated by the testimony of his supervisor, David Katz. On the day before plaintiff complained to her own supervisor, Katz observed Johnson's positioning on plaintiff's desk and plaintiff's visceral response thereto. Katz found the situation so "unusual" that he made a mental note of it because, as a supervisor, this "might be an issue [he] might have to address."

There also was evidence that Johnson's sexually harassing behavior turned physical. The United States Sixth Circuit Court of Appeals has long held that "harassment involving an element of physical invasion is more severe than harassing comments alone." *Smith v Rock-*

---

[3] However, the Sixth Circuit Court of Appeals has noted that "other courts have held that generally an employer is not liable for the harassment or other unlawful conduct perpetrated by a non-supervisory employee after work hours and away from the workplace setting." *Hawkins v Anheuser-Busch, Inc*, 517 F3d 321, 335 (CA 6, 2008) (quotation marks and citation omitted). But "when an employee is forced to work for, or in close proximity to, someone who is harassing her outside the workplace, the employee may reasonably perceive the work environment to be hostile." *Duggins v Steak 'N Shake, Inc*, 3 Fed Appx 302, 311 (CA 6, 2001), citing *Ellison v Brady*, 924 F2d 872, 882 (CA 9, 1991). Michigan courts, of course, are "not compelled to follow federal precedent or guidelines in interpreting Michigan law," although "this Court may, 'as we have done in the past in discrimination cases, turn to federal precedent for guidance in reaching our decision.' " *Radtke*, 442 Mich at 381-382 (citation omitted).

*Tenn Servs, Inc*, 813 F3d 298, 309 (CA 6, 2016) (quotation marks and citation omitted). Plaintiff testified that Johnson entered her cubicle and frequently rubbed her shoulders in a sexually suggestive manner and once kissed her on the top of the head.

Plaintiff also presented evidence that Johnson's conduct interfered with her employment and created an offensive work environment. Plaintiff changed her behavior so that she would "duck and dodge" Johnson. She also frequently pretended to be on the phone or engaged in other work activities in order to discourage him from coming into her cubicle. Plaintiff also presented evidence that she has been diagnosed with post-traumatic stress disorder. She testified that because Johnson always wore cowboy boots, his heels would click on the floor as a harbinger of his arrival. Similarly, Johnson's phone had a distinctive ringtone. When plaintiff heard these sounds in the office, she experienced and continues to experience an emotional and physical reaction. While plaintiff's subjective feelings and perceptions are insufficient to prove a hostile work environment, *Radtke*, 442 Mich at 388, we nonetheless hold that under a reasonable person standard, when viewed in a light most favorable to plaintiff, there was sufficient evidence to show that a reasonable person "would have perceived the conduct at issue as substantially interfering with [] plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment," *id.* at 394. As a result, the evidence was sufficient to withstand summary disposition on the issue of whether the harassment was sufficiently severe or pervasive as to be actionable.

We also reject defendant's argument that plaintiff failed to present sufficient evidence to establish a question of fact with respect to the issue of respondeat superior liability. In *Elezovic v Bennett*, 274 Mich App 1, 7; 731 NW2d 452 (2007), this Court stated that "when the hostile work environment is created by the actions of coworkers and other co-employees, the alleged victim seeking a remedy under the ELCRA must file a claim of hostile work environment against her employer on a vicarious liability theory." Respondeat superior, or vicarious liability, exists "when an employer has adequate notice of the harassment and fails to take appropriate corrective action." *Id.* Notice means the employer knew or should have known of the sexual harassment. *Sheridan v Forest Hills Pub Sch*, 247 Mich App 611, 621; 637 NW2d 536 (2001). "[A]n employer may avoid liability if it adequately investigated and took prompt and appropriate action upon notice of the alleged hostile work environment." *Radtke*, 442 Mich at 396 (quotation marks and citation omitted). In this case, plaintiff presented sufficient evidence from which a reasonable trier of fact could conclude that defendant had notice of the harassment yet failed to take prompt and appropriate action.

Defendant asserts that it first learned of the hostile work environment when plaintiff complained to her supervisor in October 2012 and that it thereafter took prompt action by admonishing Johnson to stay away from plaintiff. However, there was evidence to give rise to an inference of knowledge or constructive knowledge before plaintiff even complained of the harassment. "[N]otice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring." *Chambers v Trettco, Inc*, 463 Mich 297, 319; 614 NW2d 910 (2000).

Plaintiff presented substantial evidence from which a trier of fact could conclude that defendant knew, or should have known, of a substantial probability that the sexual harassment

was occurring. Plaintiff presented evidence that even before she arrived at the Lawton facility, defendant knew of Johnson's history of sexually harassing behavior. Richard Michael testified that Johnson was investigated in 2005 for exposing his genitals to three other female employees. Michael also received two other complaints by two other women. He further testified that by at least the early 2000s, it was widely known in the Department of Corrections that Johnson violated boundaries with women. Katz, Johnson's direct supervisor at the time plaintiff was assigned to Lawton, testified that he was aware of Johnson's reputation of being "a womanizer" in the office and was aware that Johnson had previously been investigated for exposing his penis to coworkers while on a work outing. Katz also observed Johnson flirting with women in the office and rubbing their shoulders.[4] Based on this evidence, a question of fact existed with respect to whether defendant would have been aware of a substantial probability that sexual harassment was occurring.

Defendant's actions in response to plaintiff's complaint and its investigation were not sufficiently "appropriate" to mandate summary disposition. In addition to the facts previously noted regarding Johnson's previous conduct, the investigation which followed plaintiff's complaint revealed that Johnson was accused of raping another employee. That evidence, together with plaintiff's complaint and the earlier allegations of having exposed himself to multiple employees, at a minimum should have prompted defendant to reconsider whether it had reached the correct conclusions about Johnson regarding the earlier incidents. As a whole, that evidence was sufficient to preclude a finding that, as a matter of law, defendant took appropriate action following its investigation of plaintiff's complaint. The only discipline ever imposed on Johnson was to transfer him to another work location. This is so even if the investigation was promptly undertaken, as defendant argues in light of the timeline of other information regarding Johnson which was reported. Simply put, the action which defendant took, simply reassigning him to another office, was inadequate to rule as a matter of law that liability was foreclosed.

For these reasons, the trial court did not err when it denied defendant's motion for summary disposition with respect to plaintiff's claim for sexual harassment/hostile work environment.

## B. RETALIATION CLAIM

Defendant also challenges the factual support for plaintiff's retaliation claim. Plaintiff contends, among other things, that she received an excessive 15-day suspension as a result of her altercation with a citizen; she alleged the discipline was imposed in retaliation for complaining about Johnson's unwelcomed sexual advances. We hold that the trial court properly denied summary disposition on this count.

---

[4] Coincidentally, as previously noted, the day before plaintiff reported her concerns to her own supervisor, Katz actually observed Johnson sitting on the corner of plaintiff's desk. Katz observed that as Johnson leaned in more, plaintiff attempted to lean away. Katz made a mental note of this incident because it was "something that [he] might need to address."

MCL 37.2701(a) provides that "[t]wo or more persons shall not conspire to, or a person shall not . . . [r]etaliate or discriminate against a person because the person has opposed a violation of this act or because the person has made a charge [or] filed a complaint . . . under the act." To establish a prima facie case of retaliation under the ELCRA, a plaintiff must demonstrate that (1) she engaged in a protected activity, (2) that this was known by the defendant, (3) that defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action. *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997).

A violation of MCL 37.2701(a) may be proven through either circumstantial or direct evidence. *Debano-Griffin v Lake Co*, 493 Mich 167, 176; 828 NW2d 634 (2013). Plaintiff has not presented any direct evidence of retaliation and, instead, relies on circumstantial evidence. Consequently, the burden-shifting approach articulated in *McDonnell Douglas Corp v Green*, 411 US 792, 802-805; 93 S Ct 1817; 36 L Ed 2d 668 (1973), is employed. *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). Thus, plaintiff bears the initial burden of establishing a rebuttable prima facie case of retaliation. *Debano-Griffin*, 493 Mich at 176. If she satisfies this requirement, a presumption of retaliation arises. *Id.* The employer may be entitled to summary disposition, however, if it articulates a legitimate nondiscriminatory reason for the adverse employment action. *Id.* If the employer articulates a legitimate reason, the plaintiff can avoid summary disposition only if she thereafter demonstrates that "a reasonable factfinder could still conclude that the plaintiff's protected activity was a 'motivating factor' for the employer's adverse action." *Id.* (citation omitted). "A plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for unlawful retaliation." *Id.* (brackets and citation omitted).

In this case, plaintiff engaged in protected activities when she complained to her supervisor in October 2012 of Johnson's alleged sexual harassment, when she pursued an internal harassment complaint in December 2013, and when she thereafter filed her circuit court complaint on September 18, 2014. It is undisputed that defendant was aware of these activities. As to the third element, defendant took adverse employment actions against plaintiff when, in October 2014, it elected to pursue formal disciplinary actions against her following a parking lot altercation she had had with a citizen, then again when it actually issued the formal, 15-day suspension in May 2015. Accordingly, the first three elements of plaintiff's prima facie claim of retaliation have been satisfied. Consequently, only the fourth element, a causal connection between plaintiff's protected activity and the adverse employment action, is ultimately at issue.

Here, defendant offered evidence that showed that it had a legitimate reason to suspend plaintiff when she violated department policy by getting into an altercation with a citizen in the parking lot. The fact that defendant sought formal discipline against plaintiff shortly after she filed her complaint, by itself, is insufficient to prove that there was a causal connection. *Id.* at 177. Accordingly, without any other evidence, summary disposition would be warranted in favor of defendant. However, plaintiff does not rely solely on the fact that defendant pursued disciplinary action against her shortly after she filed her lawsuit. Plaintiff also argued that *the excessive nature of the discipline imposed* constituted retaliation, demonstrating the pretextual nature of the discipline.

Plaintiff's supervisor, Monica Swain, testified that had the decision been left to her, no disciplinary charges would have been pursued against plaintiff for an infraction of the nature cited. Swain was aware of the circumstances surrounding the altercation and believed that a verbal counseling was instead warranted. However, Swain's own supervisor, even after having been informed of the circumstances, requested that the charges be investigated against plaintiff, including conduct unbecoming a parole agent. More importantly, at least three witnesses, who had decades of experience and were well versed in the disciplinary system, testified that the 15-day suspension plaintiff received was more excessive than that typically imposed for infractions of a similar nature. Indeed, one witness testified that in her experience, she had never seen, under similar circumstances, imposition of such a lengthy suspension. Therefore, when viewed in the light most favorable to plaintiff, there is sufficient, circumstantial evidence to create a question of fact on whether plaintiff's protected activity was a "motivating factor" for the discipline that she ultimately received.

## C. DISPARATE TREATMENT

Lastly, defendant argues that the trial court erred when it failed to grant summary disposition of plaintiff's sex discrimination claim based on disparate treatment. We agree.

A prima facie case of gender-based discrimination can be made by proving either intentional discrimination or disparate treatment. *Lytle v Malady*, 458 Mich 153, 181 n 31; 579 NW2d 906 (1998). To establish a prima facie case of intentional sex discrimination, a plaintiff must show that (1) she was a member of a protected class, (2) that she was discharged or otherwise discriminated against with respect to employment, (3) that the defendant was predisposed to discriminate against persons in the class, and (4) that defendant acted upon that predisposition when the employment decision was made. *Coleman-Nichols v Tixon Corp*, 203 Mich App 645, 651; 513 NW2d 441 (1994). Under the disparate treatment theory, a plaintiff must show that she was a member of a protected class, and that, for the same or similar conduct, she was treated differently than a man. *Id.* Plaintiff seeks relief under the disparate treatment theory. She alleges in her second amended complaint that she was disciplined differently than similarly-situated male employees. She further alleges, rather vaguely, that she was treated differently from similarly situated male employees in the terms and conditions of her employment.

In this case, defendant was entitled to summary disposition of plaintiff's disparate treatment claim because plaintiff did not present sufficient evidence to establish a prima facie case of sex discrimination based on this theory. Although as a woman plaintiff is a member of a protected class, she failed to present any evidence that, for the same or similar conduct, she was treated differently than a man. As part of proving that she was treated differently from a similarly situated employee of a different gender, plaintiff was required to demonstrate that relevant aspects of her employment were identical or nearly identical to those of at least one male counterpart. *Town v Mich Bell Tel Co*, 455 Mich 688, 700; 568 NW2d 64 (1997). In this case, plaintiff identified no other male who was similarly situated to plaintiff and who was treated differently. Indeed, with respect to her disparate impact theory, plaintiff argues on appeal:

For starters, the sexual antics of Johnson were directed exclusively at females. Only women were treated to the picture of his genitals. Johnson only kissed MDOC employees who were women, and he rubbed the shoulders only of women. In this respect, female employees in general and plaintiff in particular, were targeted with sexual harassment that males were not required to endure.

Plaintiff's argument simply appears to be an attempt to recharacterize her sexual harassment claim into a claim of sex discrimination based on a disparate treatment theory of liability. In doing so, she has failed to address what is required to establish a prima facie case of sex discrimination based on disparate treatment. Accordingly, because plaintiff failed to establish a genuine issue of material fact that, for the same or similar conduct, she was treated differently than a male coworker, summary disposition of her disparate treatment claim was warranted.

We affirm the denial of summary disposition with respect to plaintiff's claims of hostile work environment and retaliation, but we reverse the denial of summary disposition with respect to plaintiff's disparate treatment claim. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs, as no party prevailed in full. MCR 7.219.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Jonathan Tukel