*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MONIQUE TURNER,

        Plaintiff-Appellee,

v

DEPARTMENT OF CORRECTIONS,

        Defendant-Appellant,

and

RAPHAEL GOUDY,

        Defendant.

UNPUBLISHED
July 22, 2021

No. 353323
Wayne Circuit Court
LC No. 18-005035-CD

Before: RIORDAN, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant, Michigan Department of Corrections (MDOC), appeals by leave granted the order denying its motion for summary disposition regarding plaintiff's claims of sexual discrimination, harassment and retaliation under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. For the reasons stated in this opinion, we affirm in part and reverse in part.

## I. BACKGROUND

Plaintiff began working as a corrections officer at the Detroit Reentry Center (DRC) in May 2015. Defendant Raphael Goudy[1] was also working as a corrections officer at the DRC. According to plaintiff, a month after she began work, Goudy began asking her to go on dates with him and thereafter engaged in a pattern of harassment. Plaintiff estimated that over the next six months Goudy asked her to go on a date with him about five or ten times and that after she would decline the dates, Goudy would "blow kisses" at her as he walked away. She also testified that on

---

[1] The trial court dismissed Goudy from this lawsuit upon stipulation of the parties.

-1-

more than 10 occasions Goudy attempted to hug her. Plaintiff reported these incidents to her union representatives.

In November 2015, Goudy confronted plaintiff, apparently in response to her reporting him to the union representatives. According to plaintiff, Goudy stormed up to her and said, "I am going to tell you one more mother******* time, I'm going to go off on your ass and you have it coming, and you better not tell anybody." Plaintiff immediately reported this incident to one of her supervisors. Three days later, plaintiff filed a complaint with MDOC alleging discriminatory harassment. In the complaint, plaintiff explained that Goudy had created a hostile work environment and that he was "bullying her." MDOC investigated plaintiff's harassment complaint but concluded the complaint did not fall under the purview of MDOC's discriminatory harassment policy.

According to plaintiff, Goudy continued to ask her out on dates and harass her, saying things like: "I'm going to follow you, I'm going to get you, I'm going to wear you down." He would also blow kisses at her. Plaintiff also alleged that Goudy would say that he was going to "kick [her] ass" if she continued reporting him. Plaintiff estimated that Goudy came to her unit to taunt her on at least 10 to 15 occasions. Goudy would also call her work phone, laughing into the phone before hanging up or saying "I'm going to get you." Plaintiff estimated that he might call her three or four times in a single eight-hour shift. Plaintiff testified that she reported these incidents to her superiors.

At some point in 2016, Warden Kenneth Romanowski approached Captain Tommy Snipes and expressed concern about the situation with plaintiff and Goudy. According to Captain Snipes, Warden Romanowski told him, "[W]e have to keep them apart." In response, Captain Snipes instructed shift command to assign plaintiff to a different unit in the DRC, although she continued to work the same shift as Goudy.

According to plaintiff, Goudy began harassing her outside of work. On multiple occasions, plaintiff saw Goudy driving past her apartment. Then, on July 8, 2016, as plaintiff was driving home from work, she noticed Goudy driving behind her. Goudy honked his horn and drove his car alongside plaintiff's car. He blew kisses at her and said "I'm going to get you." After this incident, plaintiff drove to the police station and filed a police report. She informed the police that Goudy had been harassing and stalking her and that he had just followed her home from work. She also filed another harassment complaint about Goudy with MDOC, which MDOC denied after finding that plaintiff's allegations did not fall under the purview of its discriminatory harassment policy.

Shortly after this incident, plaintiff obtained a personal protection order (PPO) against Goudy. The PPO prohibited Goudy from appearing at plaintiff's residence and from following plaintiff, but the PPO did not prohibit Goudy from appearing at the same workplace as plaintiff. Given the language of the PPO, MDOC's head of personnel, John Patterson, concluded the PPO did not prohibit plaintiff and Goudy from being on the worksite together. Consequently, Goudy and plaintiff continued working at the DRC, both on the same schedule. Despite plaintiff's PPO, Goudy followed her home again from work. As a result, Goudy was charged with misdemeanor stalking. Upon receiving notice of this, Patterson told supervisors to keep plaintiff and Goudy as

far apart as possible and to monitor them upon arrival at work. A month or two later, plaintiff filed a third police report against Goudy.

In December 2016, Goudy obtained his own PPO against plaintiff. Captain Snipes e-mailed Patterson and noted that Goudy's PPO, unlike plaintiff's PPO, prohibited plaintiff from being in the same workplace as Goudy. Accordingly, while the PPO was in effect, plaintiff was given the option of using leave time or working temporarily at another location. Plaintiff chose to stay home and use leave time. A few days later, Goudy's PPO was dismissed, and plaintiff return to work after having taken six days of leave time.

Also in December 2016, a district court issued a felony warrant for Goudy's arrest for aggravated stalking. Once notified of this warrant, MDOC issued a "stop-order" barring Goudy from the workplace. The stop-order remained in effect for about nine months. Ultimately, the felony and misdemeanor charges against Goudy were dismissed, and MDOC allowed Goudy to return to work in the fall of 2017.

A couple months after he returned, Goudy filed his own discriminatory harassment complaint against plaintiff. He alleged that plaintiff had been making up lies about him and trying to get him fired. The MDOC found that Goudy's allegations did not fall under the purview of MDOC's discriminatory harassment policy and dismissed his complaint.

In February 2018, Goudy made a Facebook post accusing plaintiff of making up lies about him and calling her "crazy"; he attached a photograph of her to the post. In response, plaintiff filed another discriminatory harassment complaint against Goudy in March 2018. After finding that he had violated workplace rules, MDOC suspended Goudy for three days.

In May 2018, plaintiff sued MDOC and Goudy under ELCRA. First, plaintiff alleged that MDOC had treated her differently from other similarly situated employees on the basis of her sex. Second, plaintiff alleged that Goudy had subjected her to a hostile work environment through sexual harassment and that MDOC was vicariously liable for Goudy's conduct. Third, plaintiff alleged that MDOC had retaliated against her for filing complaints about the discrimination.[2]

Six months after plaintiff sued, MDOC switched plaintiff from the day shift to the midnight shift, which is 10:00 p.m. to 6:00 a.m. Plaintiff testified that, before she was transferred, Captain Snipes had called her and told her that she had two options: she could be transferred to a different facility or she could be transferred to the night shift. Plaintiff declined to be transferred to another facility but also did not want to work midnight shifts. According to plaintiff, Captain Snipes told her that she had to be transferred to midnights because of "seniority."

After discovery, MDOC moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), which plaintiff opposed in a response brief. At a hearing, the trial court denied MDOC's motion for summary disposition as to plaintiff's claims of disparate treatment, hostile work environment and retaliation.

---

[2] Plaintiff does not appeal that trial court's decision to grant summary disposition of her discrimination claims based on race. Accordingly, those claims will not be discussed.

## II. ANALYSIS

### A. DISPARATE TREATMENT

MDOC first argues the trial court should have granted summary disposition of the disparate treatment claim. We conclude that plaintiff may maintain a disparate treatment claim on the basis of her transfer to the midnight shift, but not on the basis of the other alleged incidents of disparate treatment.[3]

ELCRA provides that an employer may not discriminate against an individual because of the individual's sex. MCL 37.2202(1)(a). There are two broad categories of discrimination cases: disparate treatment and disparate impact. *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 358; 597 NW2d 250 (1999). In this case, plaintiff alleges disparate treatment, i.e., that MDOC treated her differently because she is a woman. Plaintiff does not have direct evidence of discrimination and so she must proceed under the *McDonnel Douglas*[4] burden shifting framework. *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001).

Under that framework, the plaintiff must first establish a prima facie case of discrimination, i.e., that she was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997). If a prima facie case is established, the employer may rebut this presumption by presenting a legitimate, nondiscriminatory reason for its action. *Hazle*, 464 Mich at 463. If the employer has offered a legitimate, nondiscriminatory reason for its action, the burden shifts back to the plaintiff to provide evidence that the employer's proffered reason is pretext for discrimination. *Id*. at 465.

MDOC argues that plaintiff was not subjected to an adverse employment action and, even if she was, she fails to identify a similarly situated male employee whom MDOC treated differently.

---

[3] We review de novo a trial court's decision to grant summary disposition. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v City of Pontiac*, 309 Mich App 611, 617; 873 NW2d 783 (2015). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In considering a motion under MCR 2.116(C)(10), we examine "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

[4] *McDonnell Douglas Corp v Green*, 411 US 792, 802-803; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

To constitute an adverse employment action, an action "(1) must be materially adverse in that it is more than mere inconvenience or an alteration of job responsibilities, and (2) must have an objective basis for demonstrating that the change is adverse, rather than the mere subjective impressions of the plaintiff." *Meyer v City of Ctr Line*, 242 Mich App 560, 569; 619 NW2d 182 (2000) (quotation marks and citation omitted). Adverse employment actions might include a "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Wilcoxon*, 235 Mich App at 363 (quotation marks and citation omitted).

Before the trial court, plaintiff alleged that MDOC took the following adverse employment actions against her: (1) MDOC enforced Goudy's PPO against her, requiring her to take six days off work; (2) MDOC issued plaintiff a written reprimand for violating security precautions in work incident involving Goudy; (3) MDOC did not stop Goudy from harassing her; and (4) MDOC transferred her to the midnight shift.

We agree with MDOC that the enforcement of Goudy's PPO was not a material adverse employment action. Plaintiff was required to miss work and thus use her leave time to maintain her pay, but she had to do so only for six days and was offered a different option. Further, unlike plaintiff's PPO against Goudy, Goudy's PPO prohibited plaintiff from appearing at Goudy's work. Thus, MDOC had a legitimate, nondiscriminatory reason for enforcing Goudy's PPO. And plaintiff has provided no evidence that MDOC's explanation for this decision was a pretext for discrimination. Dismissal of the claim predicated on the written reprimand was also warranted. Even assuming the reprimand carries a material adverse effect, plaintiff does not dispute that she did not follow proper procedures for the incident in question, nor does she identify evidence suggesting that the reason for the reprimand was pretextual.

MDOC's failure to stop Goudy's alleged harassment could be considered an adverse employment action. See *Meyer*, 242 Mich App at 572. However, plaintiff does not identify a similarly situated male employee that was treated differently than her. Goudy also made a claim of discrimination against plaintiff and, like plaintiff's complaints, MDOC determined that it did not fall within its discriminatory harassment policy. Thus, plaintiff fails to establish a prima facie case that MDOC's alleged failure to take adequate remedial action against Goudy was because of plaintiff's sex.

However, we conclude that plaintiff has a viable disparate treatment claim on the basis of her transfer. An unwanted transfer to the midnight shift is more than a mere inconvenience. Working from 10:00 p.m. until 6:00 a.m. forces a person to live nocturnally—a lifestyle at odds with a human being's natural circadian rhythm. Plus, because most people work during the day, a night-shift employee could have increased difficulty scheduling time to enjoy life outside of work. Further, Goudy was a similarly situated male employee who was not transferred, i.e., both plaintiff and Goudy were corrections officers working the same shift at DRC. MDOC notes that Goudy had more seniority than plaintiff, but there is no evidence that Goudy's work shift could not be changed or that his schedule could not otherwise be altered to lessen his interactions with plaintiff. Accordingly, plaintiff set forth a prima facie case of disparate treatment based on the transfer.

MDOC offered a legitimate, nondiscriminatory reason for transferring plaintiff to the midnight shift. There was testimony that MDOC needed female staff on the midnight shift, and an internal e-mail shows that plaintiff was not the only female employee transferred to the midnight shift. However, the trial court correctly concluded that plaintiff provided evidence showing that this proffered reason was a pretext for discrimination on the basis of sex. Specifically, the trial court found that plaintiff had undermined MDOC's nondiscriminatory reason by testifying that MDOC had offered her the option of transferring facilities as an alternative to transferring shifts. In other words, while MDOC maintains that plaintiff's transfer was made solely because of institutional needs, plaintiff's testimony strongly suggests that MDOC was trying to separate plaintiff and Goudy by moving plaintiff, rather than Goudy. Indeed, when asked why plaintiff was transferred, Captain Snipes answered, "Because of her continued complaints to her shift commander." This was sufficient evidence to show that MDOC's reason for the transfer was pretextual.

In sum, viewing the evidence in a light most favorable to plaintiff as the nonmoving party, there is a genuine issue of material fact whether MDOC intentionally discriminated against plaintiff on the basis of sex when it transferred her to the midnight shift. Therefore, her disparate treatment claim may proceed on that basis, though not on the other alleged incidents of disparate treatment.

## B. HOSTILE WORK ENVIRONMENT

MDOC next argues that the trial court should have dismissed plaintiff's hostile work environment claim. We disagree.

Under ELCRA, discrimination on the basis of sex includes sexual harassment, which is defined in relevant part as follows:

> Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> * * *
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . . [MCL 37.2103(i)(*iii*).]

To establish a prima facie case of hostile work environment on the basis of sexual harassment, the plaintiff must show:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of sex; (3) the employee was subjected to unwelcome sexual conduct or communication; (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. [*Haynie v State*, 468 Mich 302, 307-308; 664 NW2d 129 (2003)].

-6-

First, contrary to MDOC's argument, we conclude that a reasonable jury could find that Goudy subjected plaintiff to unwanted sexual conduct or communication. Goudy's conduct such as repeatedly asking plaintiff on dates, trying to hug her and blowing kisses at her was sexual in nature as it clearly conveyed his sexual interest in plaintiff. Moreover, in light of his repeated unwanted advances, Goudy's statements such as, "I'm going to get you," carried a sexual overtone. Plaintiff reasonably interpreted these comments to mean that Goudy was "was going to get [her] sexually." Thus, when viewed in context, Goudy's conduct and communication toward plaintiff was of a sexual nature.

MDOC also argues that plaintiff fails to show that Goudy's conduct was severe or pervasive. "[W]hether a hostile work environment existed shall be determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Elezovic v Bennett*, 274 Mich App 1, 16; 731 NW2d 452 (2007). Generally, the harassment must be severe or pervasive. See *Harris v Forklift Sys, Inc*, 510 US 17, 21; 114 S Ct 367; 126 L Ed 2d 295 (1993);[5] *Langlois v McDonald's Restaurants of Michigan, Inc*, 149 Mich App 309, 313; 385 NW2d 778 (1986).

As an initial matter, MDOC contends that Goudy's conduct outside of the workplace is immaterial to whether plaintiff was subjected to a hostile work environment. Although this Court has not directly addressed this issue, we have considered an off-work incident in evaluating a sexual harassment claim. See *Rymal v Baergen*, 262 Mich App 274, 313; 686 NW2d 241 (2004) ("Clearly, there was sufficient evidence of a hostile work environment predicated on abusive behavior closely following the rejection of [the supervisor's] unwelcome attempt to resume a sexual relationship[, which occurred at a restaurant] . . . ."). While the overriding question is whether the employee was subjected to hostile work environment, the totality of the circumstances must be considered. *Elezovic*, 274 Mich App at 16. And part of the totality of the circumstances in this case is that, in addition to Goudy's statements and conduct toward plaintiff at work, he began driving by her apartment and following her home. It should go without saying that such off-work incidents made Goudy's conduct at work, e.g., calling plaintiff and laughing over the phone before hanging up or stating "I'm going to get you," substantially more distressing. Accordingly, we conclude that Goudy's conduct toward plaintiff outside the workplace is relevant to determining whether plaintiff was subjected to a hostile work environment.

With that in mind, there is a question of fact whether a reasonable person would perceive Goudy's conduct as sufficiently severe or pervasive. As noted, there is evidence that Goudy repeatedly made unwanted advances toward plaintiff. After her initial complaints, Goudy would taunt plaintiff at her work station and regularly call her work phone only to laugh and hang up or make a threatening statement. Goudy's conduct persisted over a long period time and was made much worse when he began driving by plaintiff's home and following her home. His behavior also took on new severity when he threatened to "kick [plaintiff's] ass" and called her a "bitch."

---

[5] While this Court is not bound by federal caselaw interpreting Title VII, "Michigan courts regularly look to it for guidance in interpreting ELCRA." *White v Dep't of Transp*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 349407); slip op at 8.

While MDOC wants to dismiss this behavior as nonsexual, these incidents undoubtedly made Goudy's unwanted advances more distressing. While repeatedly telling plaintiff that he was "going to get [her]," may in and of itself support a hostile work environment, that statement took a more serious connotation given Goudy's other behavior.

MDOC also argues that it cannot be held vicariously liable for Goudy's conduct. Under ELCRA, "an employer may avoid liability if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Radtke v Everett*, 442 Mich 368, 396; 501 NW2d 155 (1993) (quotation marks and citation omitted). Notice is adequate if, "by an objective standard, the totality of the circumstances was such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring." *Chambers v Trettco, Inc*, 463 Mich 297, 319; 614 NW2d 910 (2000). "[T]he relevant inquiry concerning the adequacy of the employer's remedial action is whether the action reasonably served to prevent future harassment of the plaintiff." *Id*.

First, there is a question of material fact whether MDOC had adequate notice of Goudy's sexual harassment. MDOC argues that plaintiff's formal complaints gave no indication of sexual harassment. While the November 2015 complaint did not necessarily inform MDOC that Goudy's harassment was sexual in nature, the July 2016 complaint surely did. Plaintiff explains in that complaint that: Goudy comes to her work area in a different building when no one is around; that he blows kisses at her; that he calls her phone and "make[s] crazy noises" before hanging up; and that he recently followed her in his vehicle after work, blew his horn at her, "got on the side of [her vehicle], rolled down his window[,] blew a kiss then laugh[ed]." Plaintiff selected "Discriminatory Harassment/Sex" from the possible allegation types. Further, formal complaints are not required for notice and plaintiff testified that she orally reported Goudy's conduct to six different superiors. Plaintiff also informed her supervisor that Goudy had followed her home and of the PPO she obtained against him. Accordingly, a reasonable jury could conclude that MDOC had adequate notice that plaintiff was being subjected to sexual harassment.

Second, reasonable minds could differ on whether MDOC took appropriate remedial action. MDOC argues that it: investigated plaintiff's complaints; disciplined Goudy in 2018 for his Facebook post; suspended Goudy after he was charged criminally; gave plaintiff the option to transfer to a different facility; and tried to separate plaintiff and Goudy within the DRC. Yet despite these efforts, Goudy continued to harass plaintiff. Given the duration and persistence of Goudy's conduct, a reasonable jury could question whether MDOC's response was proportionate to Goudy's behavior and whether it should have taken other actions such as disciplining Goudy earlier or changing his work schedule or location.

In sum, the trial court correctly denied summary disposition of the hostile work environment claim.

## C. RETALIATION

MDOC also argues that the trial court should have dismissed plaintiff's retaliation claim. We affirm the denial of summary disposition as to plaintiff's transfer to the midnight shift. But we conclude that summary disposition is appropriate for the other alleged retaliatory actions.

Under MCL 37.2701(a), an employer is liable if it retaliates against an employee for engaging in a protected activity. *White v Dep't of Transp*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 349407); slip op at 7 (citation omitted). This antiretaliation provision states:

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701(a).]

Retaliation claims, like disparate treatment claims, proceed under the *McDonnell Douglas* framework. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 276-277; 826 NW2d 519 (2012). Thus, plaintiff must first establish a prima facie case of retaliation. *Id*. If a plaintiff establishes a prima facie case, a court presumes that an employer's conduct, if otherwise unexplained, was retaliatory. *Id*. The burden then shifts to the employer to present a legitimate, nonretaliatory reason for its action. *Id*. Once the employer has done so, the burden shifts back to the plaintiff to provide evidence that the employer's proffered reason is pretextual. *Id*.

To establish a prima facie case of retaliation, a plaintiff must show (1) the plaintiff engaged in a protected activity, (2) this was known by the defendant, (3) the defendant took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Meyer*, 242 Mich App at 568-569.

MDOC argues that plaintiff fails to show she was subjected to an adverse employment action, or a causal connection between that employment action and her complaints against Goudy.

The type of action that constitutes an adverse employment action for a disparate treatment claim is different from the type of action that constitutes an adverse employment action for a retaliation claim. *White*, ___ Mich App at ___; slip op at 9-11. We recently adopted the standard articulated in *Burlington Northern & Santa Fe R Co v White*, 548 US 53, 87; 126 S Ct 2405; 165 L Ed 2d 345 (2006), for determining what constitutes a materially adverse employment action in the context of a retaliation claim. *White*, ___ Mich App at ___; slip op at 11. For a retaliation claim, a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at ___; slip at 9, quoting *Burlington Northern & Santa Fe R Co*, 548 US at 68 (quotation marks omitted). "In order to show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Allen v Michigan Dep't of Corrections*, 165 F3d 405, 413 (CA 6, 1999).

Plaintiff alleges the same adverse employment actions that she relies on for her disparate treatment claim. For the reasons already discussed, plaintiff has not rebutted MDOC's legitimate nonretaliatory reasons for the enforcement of the PPO and her written reprimand. Accordingly, even assuming plaintiff states a prima facie case, her claims of retaliation based on these actions fail for a failure to show pretext.

As to plaintiff's claim that MDOC retaliated against her by not stopping Goudy's harassment, we agree with MDOC that plaintiff has not shown a causal connection. As discussed, whether MDOC took sufficient remedial action to address the harassment is a question of fact for the jury. But the record does not support plaintiff's contention that MDOC's failure to end the harassment was done so out of retaliation. MDOC investigated plaintiff's complaints and made efforts to separate her and Goudy. These efforts were unsuccessful to end the harassment, but plaintiff does not identify any evidence allowing for the inference that MDOC intentionally took inadequate action as retaliation for plaintiff filing complaints.

Plaintiff has established a question of fact whether the transfer to the midnight shift constituted an adverse employment action. For the reasons already discussed, a transfer to the midnight shift could dissuade a reasonable employee from making or supporting a charge of discrimination. *White*, ___ Mich App at ___; slip op at 9. MDOC argues that there is no causal connection given that the transfer occurred in November 2018 and plaintiff's last formal complaint against Goudy was made in March 2018. This overlooks, however, that plaintiff filed suit in May 2018 and that when she previously informed Warden Romanowski that she may go outside of MDOC to seek help against Goudy, Romanowski allegedly replied, "[D]on't make no quick decisions before anything is handled because you–you never know what's going to happen to you." Then, within six months of filing her complaint, plaintiff was given two unattractive options: transfer facilities or move to the midnight shift. Further, plaintiff had been with MDOC since 2015 and she had not previously been transferred to a midnight shift or asked to move facilities. There is also plaintiff's testimony that Sergeant Bohannon told her in March 2018 to quit being a "child" and to stop complaining about Goudy, suggesting that the prison leadership had grown tired of plaintiff's complaints. And, as noted, Captain Snipes testified that plaintiff was transferred because of her continued complaints against Goudy. Viewed in a light most favorable to plaintiff, there is sufficient evidence to allow for an inference of a causal connection. For the same reasons, there is a triable issue whether MDOC's proffered reason for the transfer was a pretext for retaliation.

## III. CONCLUSION

The trial court correctly denied MDOC's motion for summary disposition as to plaintiff's hostile work environment claim. Plaintiff has viable claims of disparate treatment and retaliation based on her transfer to the midnight shift. But all of other claims of disparate treatment and retaliation are dismissed.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

-10-